## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND | Case No. 20-10343 (LSS) |
| DELAWARE BSA, LLC,[1] | Jointly Administered |
| Debtors. | |
| HARTFORD ACCIDENT AND INDEMNITY COMPANY AND FIRST STATE INSURANCE COMPANY, | Adv. Proc. No. 20-50601-LSS |
| Plaintiffs, | **Re: Adv. D.I. 1** |
| v. | |
| BOY SCOUTS OF AMERICA, *et al.*, | |
| Defendants. | |

## DEFENDANTS THE BOY SCOUTS OF AMERICA'S AND THE LOCAL COUNCILS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtors' federal tax identification number, are as follows:  Boy Scouts of America (6300) and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 W. Walnut Hill Ln., Irving, TX 75038.

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ................................................................. 1

II.   FACTUAL BACKGROUND .................................................................... 5

   A.  The Hartford Policies ................................................................. 5

   B.  The BSA and Councils Sought Coverage Under the Hartford Policies, But Hartford Avoided Its Contractual Obligations ................................................ 6

   C.  The BSA and the Councils File the Texas State Court Action And Hartford's Attempt to Intervene in the Illinois Action .......................................... 7

   D.  Hartford's Erroneous Removal Based on Diversity Jurisdiction........................ 9

   E.  The BSA's Bankruptcy Filing and The Texas Federal Court's Order on The Motion to Remand ...................................................................... 9

   F.  The BSA's and Councils' Motion for Abstention and Remand and Hartford's Filing of the Adversary Proceeding.......................................... 10

   G.  The Texas Federal Court's Ruling On The BSA's and Councils' Motion for Abstention and Remand ................................................................ 11

III.  ARGUMENT ................................................................................ 12

   A.  This Court Should Dismiss Hartford's Adversary Proceeding as the Texas Federal Court Did the Texas State Action Because Mandatory Abstention Applies. ...... 12

      1.  The Motion to Abstain is Timely.......................................... 13

      2.  The BSA and the Councils Have Already Commenced An Action in Texas State Court, And This Adversary Proceeding Seeks To Adjudicate The Same Coverage Disputes At Issue in the Texas State Action ......................... 13

      3.  The Adversary Proceeding Is Based on State Law Claims...................... 17

      4.  The Texas State Court Action Can Be Timely Adjudicated.................... 17

      5.  There is No Basis for Federal Jurisdiction Absent Bankruptcy.............. 19

      6.  The Adversary Proceeding is Non-Core ..................................... 20

   B.  Even if Abstention is Not Mandatory (Which It Is), the Court Should Abstain Pursuant to the Discretionary Abstention Doctrine .................................. 20

      1.  There Is No Effect on the Efficient Administration of the Estate.......... 21

      2.  State Law Issues Predominate Over Bankruptcy Issues ...................... 22

      3.  The Action Will Address Unsettled Issues of State Law.................... 22

      4.  A Related Proceeding Has Commenced in State Court........................ 23

      5.  There Is No Independent Federal Jurisdiction ............................. 23

      6.  The Adversary Proceeding Is Remote from the Main Case ................... 24

      7.  The Adversary Proceeding Is Not a Core Proceeding ....................... 24

8.    Severing the State Law Claims Is Not Necessary.................................................... 24

9.    The Courts' Dockets Demand Abstention .............................................................. 25

10.   Hartford Is Engaging in Forum Shopping ............................................................. 25

11.   This Court May Not Hold a Jury Trial................................................................... 26

12.   Non-Debtors Are Parties to the Adversary Proceeding .......................................... 26

IV.   CONCLUSION.............................................................................................................. 27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allied Mech. & Plumbing Corp. v. Dynamic Hostels Dev. Fund Co. (In re Allied Mech. & Plumbing Corp.)*,
62 B.R. 873 (Bankr. S.D.N.Y. 1986) .....................................................................14

*Best v. Galloway (In re Best)*,
417 B.R. 259 (Bankr. E.D. Pa. 2009) .....................................................................25

*Consulting Actuarial Partners, Ltd. P'ship v. Descap Planning, Inc. (In re Consulting Actuarial Partners, Ltd. P'ship)*,
72 B.R. 821 (Bankr. S.D.N.Y. 1987).....................................................................15

*D'Angelo v. J.P. Morgan Chase Bank (In re D'Angelo)*,
475 B.R. 424 (Bankr. E.D. Pa. 2012) .....................................................................25

*In re Glunk*,
Nos. 05-31656-ELF, 06-373, 2006 WL 6659552 (Bankr. E.D. Pa. Aug. 18, 2006) ...................................................................................................................17

*HE. Butt Grocery Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*,
150 F .3d 526, 534 (5th Cir. 1998) .....................................................................23

*Integrated Health Servs. v. Elkins (In re Integrated Health Servs)*,
291 B.R. 615 (Bankr. D. Del. 2003) ........................................................... *passim*

*In re Kessler*,
430 B.R. 155 (Bankr. M.D. Pa. 2010) .....................................................................13

*McMahon Books v. New Castle Assocs. (In re McMahon Books)*,
173 B.R. 868 (Bankr. D. Del. 1994) .....................................................................26

*In re Pompelia*,
560 B.R. 422 (Bankr. W.D. Pa. 2016) .....................................................................17

*Shalom Torah Ctrs. v. Philadelphia Indem. Ins. Cos.*,
2011 WL 1322295 ...........................................................................22, 23, 24

*Sun Healthcare Group, Inc. v. Levin (In re Sun Healthcare Group, Inc.)*,
267 B.R. 673 (Bankr. D. Del. 2000) ........................................................... *passim*

*Trans World Airlines v. Icahn (In re Trans World Airlines)*,
278 B.R. 42 (Bankr. D. Del. 2002) .....................................................................14

*U.S. Physicians, Inc. v. Smith (In re U.S. Physicians, Inc.)*,
 Nos. 00–4622, 00–138, 2001 WL 793271 (E.D. Pa. July 12, 2001) ......................................13

*WRT Creditors Liquidation Trust v. C.I.B.C. Oppenheimer Corp.*,
 75 F. Supp. 2d 596 (S.D. Tex. 1999) .......................................................................................19

**Statutes**

28 U.S.C. § 157(b)(2) .......................................................................................................................20

28 U.S.C. § 1334..............................................................................................................10, 20, 23

28 U.S.C. § 1334(b) .................................................................................................................12, 20

28 U.S.C. § 1334(c)(1).....................................................................................................................20

28 U.S.C. § 1334(c)(2)...............................................................................................................12, 13

28 U.S.C. § 1452(a) .........................................................................................................................10

Bankruptcy Code Section 362 ...........................................................................................................9

Texas Insurance Code Chapter 541 ...................................................................................................7

Texas Insurance Code Chapter 542 ...................................................................................................7

# I.  PRELIMINARY STATEMENT

The Boy Scouts of America (the "BSA") and the local councils named here (the "Councils" and collectively, the "Defendants") move to dismiss this action based on mandatory and discretionary abstention.  Dismissal based on mandatory abstention would be consistent with the recent ruling by the United States District Court for the Northern District of Texas (the "Texas Federal Court"), which concluded that all the requirements for mandatory abstention have been met with respect to the Defendants' insurance-coverage dispute with Hartford Accident and Indemnity Company ("Hartford A&I") and First State Insurance Company ("First State" and collectively, "Hartford").

In June 2018, the BSA and certain of the Councils[2] filed an action against Hartford in the District Court of Dallas County, Texas (the "Texas State Action").  The Texas State Action sought to resolve the same insurance-coverage issues that are presented in this Adversary Proceeding:

| Issues in Texas State Action | Issues in Adversary Proceeding[3] |
|---|---|
| The "Number of Occurrences" Issue[4] | |
| BSA seeks a declaration that *each sexual abuse claim against BSA constitutes an "occurrence"* under the Hartford Policies. Ex. 3 (Orig. Pet.). | To the extent coverage is provided for under the Hartford Policies, Hartford seeks a declaration as to the *Number of Occurrence(s)* under the policies. Doc. No. 1 at 27. |
| The "Expected and Intended" Issue | |

---

[2] When referencing the Councils relating to the Texas State Action, the BSA and the Councils refer to the Councils that are a party to the Texas State Action, which include Connecticut Yankee Council, Spirit of Adventure Council, Aloha Council and Cascade Pacific Council.

[3] Hartford's remaining claims in the Adversary Proceeding are either (1) directed towards the insurers of BSA and the Councils insurers, not the BSA or Councils or (2) the claims involve issues relating to coverage under the Hartford Policies that can be litigated in the Texas State Action.  Doc. No. 1 (Compl.).

[4] The Number of Occurrences Issue stems from Hartford's position that all claims for sexual abuse alleged in the multitude of underlying lawsuits throughout the country involving various victims and various perpetrators are the result of a single occurrence.  Doc. No. 1 (Complaint).  Hartford asserts that the injuries alleged in the underlying lawsuits were caused by BSA's failure to warn parents and guardians that Scouts might be abused. *Id.* ¶ 133.  As noted in the chart, the BSA's position is that each claimant constitutes a separate occurrence, entitling the Defendants to the per-occurrence limits of liability under the Hartford's policies (where applicable).

| | |
|---|---|
| Plaintiffs' Petition against Hartford A&I and First State may be barred to the extent that the underlying claims involve "personal injury" or "bodily injury" that was either ***expected or intended from the standpoint of the insured***. Ex. 4 (Hartford Answer). | An actual and justiciable controversy exists regarding whether there is coverage for the Underlying Lawsuits under the Hartford Policies because the alleged injury was not caused by an occurrence under the Hartford Policies, i.e., ***there was no "accident" and the alleged injury was expected and/or intended***. Doc. No. 1 at 29. |
| **The "Notice" Issue & the "Duty to Cooperate" Issue** | |
| Plaintiffs' Petition against Hartford A&I and First State may be barred to the extent that the insured has not complied with all necessary conditions precedent under the Hartford A&I and First State policies at issue, including, but not limited to, the requirements that the ***insured cooperate with Hartford A&I and First State*** and provide Hartford A&I and First State with ***timely notice of the underlying claims***, or of the accidents or occurrences that form the basis for those actions, or of any other developments likely to affect Hartford A&I's and First State's liability. Ex. 4 (Answer) (emphasis added). | An actual and justiciable controversy exists regarding coverage exists for Underlying Lawsuits where BSA and its local councils did ***not provide notice or did not provide timely notice***. Doc. No. 1 at 33.<br><br>Hartford is entitled to a judgment that it does not have any coverage obligations for the abuse claims, including the Underlying Lawsuits, as a result of BSA's ***breach of the cooperation provisions*** of the Hartford Policies. Doc. No. 1 at 26. |
| **The "Consent to Settle" Issue** | |
| Plaintiffs' Petition against Hartford A&I and First State may be barred to the extent Plaintiffs have made voluntary payments or incurred voluntary obligations without the ***prior approval of or consent*** by Hartford A&I and First State. Ex. 4 (Answer). | An actual and justiciable controversy exists regarding coverage exists for at least certain Underlying Lawsuits for which BSA ***failed to seek consent***. Doc. No. 1 at 34. |

For the last two years, Hartford has attempted to avoid the Texas State Action by seeking to have these insurance-coverage issues litigated anywhere but Texas. Hartford first attempted to intervene in a coverage dispute between the BSA and another insurer in Illinois state court—raising the same issues above—despite the fact that Hartford never issued policies to the BSA during the period in dispute, and the BSA had never sought coverage from Hartford for the lawsuits in dispute in that action. When the Illinois court rejected Hartford's effort to intervene, Hartford then attempted to remove the Texas State Action to the Texas Federal Court based on an improper contention that there was a complete diversity between the parties. Specifically,

Hartford, a Connecticut entity, contended that the Connecticut local council named in the Texas State Action was improperly joined.  The BSA and the Councils moved to remand.

The Texas Federal Court rejected Hartford's arguments related to diversity jurisdiction, finding that the "Court is not convinced by Hartford's arguments" and concluding that the "Connecticut Council was not improperly joined."[5]  However, by that time, the BSA had filed its Chapter 11 petition and, in notifying the Texas Federal Court, Hartford argued that related-to jurisdiction may exist.  As a result, the Texas Federal Court denied the motion to remand, but invited the BSA and the Councils to file a second motion to remand addressing mandatory abstention, discretionary abstention, and equitable remand.

The BSA and the Councils then filed a second-motion to remand based on mandatory and discretionary abstention.  Hartford opposed that motion, contending that the requirements for mandatory abstention had not been met and arguing that because "BSA has repeatedly emphasized that coordination of its insurance program is essential to BSA's reorganization," all insurance issues should be resolved in a coordinated fashion before this Court.[6]  The BSA and the Councils replied, noting that any arguments by Hartford about efficiency were: (1) not a factor considered for mandatory abstention and (2) irrelevant because insurance-coverage disputes are non-core proceeding and, therefore, the reference would likely be withdrawn.

In response, on May 15, 2020, Hartford initiated this Adversary Proceeding.  The Adversary Proceeding asserts breach of contract and declaratory judgment claims against the Defendants on the exact same insurance-coverage issues that are pending in the Texas State Action.

---

[5] Ex. 12 at 14-15 (Mar. 10 Or.).
[6] Ex. 17 (Hartford Opp.).

On August 6, 2020, the Texas Federal Court ruled that the BSA and the Councils had established mandatory abstention and the Texas Federal Court remanded the action back to Texas state court.  In so ruling the Texas Federal Court noted that "Hartford either concedes or fails to respond to Plaintiffs' contention that the first three factors are satisfied" and concluded that "regardless, Plaintiffs have met [the mandatory abstention] factors."[7]  In addition, the Texas Federal Court admonished Hartford for its gamesmanship and noted that forcing the BSA and the Councils to start anew in this Adversary Proceeding made little sense:

> To add, Hartford has not shown how starting the litigation from square one in a new forum, with a host of new issues and added parties that are tenuously related to this litigation, will somehow be more efficient than just sending the case back to Texas state court.  **The Court thus agrees with the Boy Scouts that this appears to be further gamesmanship on Hartford's part to avoid litigation in a Texas forum.**

Ex. 1 at 16 (Aug. 6 Order) (emphasis added).

For the same reasons the Texas Federal Court ruled that mandatory abstention was warranted, this Court should likewise dismiss this Adversary Proceeding.

### *All Six Factors of Mandatory Abstention Apply*

Courts in the Third Circuit consider six factors when evaluating mandatory abstention:

> (1) the motion to abstain is timely; (2) the Movant has already commenced an action in a state court; (3) the action is based upon a state law claim or a state law cause of action; (4) the action can be timely adjudicated; (5) there is no independent basis for federal jurisdiction which would have permitted the action to have been commenced in a United States court, absent bankruptcy; and (6) the matter before the Bankruptcy Court is non-core.[8]

In issuing its ruling, the Texas Federal Court analyzed five of these factors as timeliness of filing a motion to dismiss for mandatory abstention is not a factor considered by the Fifth Circuit.

---

[7] Ex. 1 at 19 (Aug. 6 Or.).
[8] *Sun Healthcare Group, Inc. v. Levin (In re Sun Healthcare Group, Inc.)*, 267 B.R. 673, 676 (Bankr. D. Del. 2000).

*First*, this motion is timely as it was filed early in the adversary proceeding and before the BSA and the Councils filed any other pleadings.

*Second*, the BSA and certain of the Councils have already commenced an action in Texas state court. The Texas Federal Court held that this factor was met and Hartford never argued to the contrary.

*Third*, the Texas federal court has found (and Hartford has conceded) that this Adversary Proceeding is based solely on state law claims.

*Fourth*, the claims at issue in the Adversary Proceeding can be timely adjudicated in Texas state court. Indeed, the parties have briefed and set for hearing a motion for summary judgment on the key issue of Number of Occurrences. The parties have also litigated this insurance coverage dispute for over a year in the Texas state court, advancing discovery.

*Fifth*, the Texas Federal Court has ruled (and Hartford has again conceded) that there is no independent basis for federal jurisdiction absent the BSA's bankruptcy.

*Sixth*, Hartford conceded in its Complaint that this Adversary Proceeding is non-core.

Because the BSA and the Councils have shown that all six factors for mandatory abstention have been met, this Court should dismiss this Adversary Proceeding.

Moreover, while not decided by the Texas Federal Court (given that it found mandatory abstention applies), the BSA and the Councils have also shown that all of the factors for discretionary abstention have likewise been met.

For all the reasons set forth below, this Court should dismiss this Adversary Proceeding.

## II.    FACTUAL BACKGROUND

### A.    The Hartford Policies

The BSA maintains a comprehensive, broad insurance program. From approximately 1962 to the present, BSA purchased several general liability, umbrella, and/or excess liability

insurance policies, and from 1971 to 1978, Hartford issued primary, umbrella and excess general liability insurance policies to the BSA and to certain of the Councils.  Doc. No. 1 (Compl. ¶¶ 89, 92).  In addition to the policies issued by Hartford A&I, First State also issued five excess policies to the BSA and its local councils between 1978 and 1983, and another in 1988 (collectively, the "Hartford Policies").  *Id.* ¶ 94.

The Hartford Policies obligate Hartford to provide the BSA and the Councils coverage for a broad array of claims, including alleged sexual-abuse claims.  Specifically, the Hartford Policies provide that they will pay "all sums that the insured is obligated to pay as damages because of personal injury [which includes bodily injury] to which the insurance applies, caused by an occurrence."  *Id.* ¶ 93.

**B.**    **The BSA and Councils Sought Coverage Under the Hartford Policies, But Hartford Avoided Its Contractual Obligations**

The BSA and Councils have been named as defendants in numerous lawsuits (the "Underlying Lawsuits") across the United States in which the underlying plaintiffs allege that they were sexually abused while participating in BSA programs.  *Id.* ¶ 99.  Because many of the Underlying Lawsuits allege abuse during the years that Hartford provided coverage, the BSA and the Councils timely provided notice to Hartford of these claims and sought coverage for its defense costs and indemnity payments.

Hartford asserted several coverage defenses to deny that it owed the BSA and the Councils any obligation to pay defense and indemnity payments for the Underlying Lawsuits. *Id.*  Most significantly was Hartford's defense based on the Number of Occurrences Issue.  As noted *supra* in footnote three, Hartford's position is that all the claims for sexual abuse alleged in the multitude of Underlying Lawsuits throughout the country involving various victims and various perpetrators are the result of a single occurrence.  Ex. 7-B (Hartford's Resp. to Interrog.,

No. 3). Hartford asserts the injuries alleged in the Underlying Lawsuits were caused by BSA's failure to warn parents and guardians that Scouts might be abused. Doc. No. 1 (Compl. ¶ 133). Based on this one "occurrence" theory, Hartford contends that, once a policy's per-occurrence limits are exhausted by any claim, it has no further responsibility under those policies for any other claims relating to sexual abuse. Ex. 2 at 8 (Hartford's Mot. to Interv.).

The Defendants contend, however, that each claim of alleged sexual abuse constitutes a separate occurrence, as the alleged sexual abuse involved claims in different locations, at different points of time, involving different parties. Ex. 3 (Orig. Pet. ¶ 37). Thus, Defendants contend that each claim of sexual abuse is entitled to the "per-occurrence" limit of liability under the Hartford policies. *Id.* This is the heart of the dispute between the Defendants and Hartford, and is the focus of the Texas State Action. *Id.*

**C.** **The BSA and the Councils File the Texas State Court Action And Hartford's Attempt to Intervene in the Illinois Action**

On June 5, 2018, the BSA and certain of the Councils[9] filed a lawsuit in the District Court for the 95th Judicial District of Dallas County, Texas against Hartford for its improper denial of coverage. *Id.* BSA asserted several state-law claims against Hartford, including: (1) declaratory judgment; (2) breach of contract; and (3) violations of Chapter 541 and 542 of the Texas Insurance Code. *Id.* ¶¶ 33-57. Among other things, the Texas State Action sought resolution of the Number of Occurrences Issue. *Id.* ¶ 37. In its Answer, Hartford also asserted several affirmative defenses that are at issue in this Adversary Proceeding, including the Expected and Intended Issue, Notice Issue, Duty to Cooperate Issue, and Consent to Settle Issue. Ex. 4 (Answer, at 8-10).

---

[9] As noted above, the Councils included in the Texas State Action include Connecticut Yankee Council, Spirit of Adventure Council, Aloha Council, and Cascade Pacific Council.

On June 26, 2018, a *mere three weeks* after the BSA and certain of the Councils filed the Texas State Action, Hartford A&I filed a Motion to Intervene in a pending insurance coverage action in Illinois styled *National Surety Corporation v. Boy Scouts of America*, et al., Cause No 2017-CH-14975, Circuit Court of Cook County (the "Illinois Action").  Ex. 2 (Hartford's Mot. to Interv.).  The Illinois Action was a declaratory action brought by National Surety Corporation, an insurer that issued policies to the BSA in 1983 and 1984. Ex. 5 (Ill. Compl. ¶ 40).  The Illinois Action stemmed from a dispute regarding coverage for a specific set of lawsuits known as the Hacker Lawsuits.  *Id.* ¶ 44.  The Hacker Lawsuits alleged that a Scout Leader had abused Scouts between 1980 and 1989.  *Id.*

Despite the fact that (1) Hartford A&I did not issue *any* policies to the BSA from 1980 to 1989[10] and (2) the BSA had *never* sought coverage for the Hacker Lawsuits from Hartford A&I,[11] Hartford A&I nevertheless argued that it should be allowed to intervene in the Illinois Action.  Ex. 2 (Mot. to Interv.).  Hartford A&I's proposed complaint in the Illinois Action included claims raised in the Texas State Action, including the Number of Occurrences Issue, the Expected and Intended Issue, and the Notice Issue.  *Id.* at 8.

The BSA was forced to expend time and resources filing briefs in opposition to Hartford A&I's Motion to Intervene.  Ex. 6 (BSA Opp.).  Unsurprisingly, the Illinois court denied Hartford A&I's Motion to Intervene, noting that the court had "serious doubt that Hartford can establish proper jurisdiction in this Court for Hartford's non-Illinois disputes with BSA."  Ex. 8 (Hrg. Trans., 154:18-22).

---

[10] Doc. No. 1, ¶¶ 89, 92.

[11] Ex. 6 (BSA Opp., at 5).

**D.**     **Hartford's Erroneous Removal Based on Diversity Jurisdiction**

Given Hartford's failed effort to intervene in Illinois, the parties proceeded in the Texas State Action.  The parties conducted significant discovery, including nearly completing written discovery and meeting and conferring on several discovery issues.  Ex. 7 (Green Aff. ¶ 3).  In addition, the BSA and the Councils filed, briefed, and set for hearing a motion for summary judgment on the Number of Occurrences Issue.  *Id.* ¶ 4; Ex. 9 (Hrg. Not.).  The Texas state court set the motion for hearing on June 28, 2019.  *Id.*

On May 31, 2019—almost a year after the suit was filed and on the eve of the summary judgment hearing—Hartford improperly filed a notice of removal to the Texas Federal Court. Ex. 10 (Notice of Rem.).  Hartford contended that diversity jurisdiction existed because the Connecticut Council—a plaintiff in the Texas State Action and an additional insured under the Hartford Policies—was improperly joined.  *Id.* ¶¶ 14-15.  This is notwithstanding the fact that both the Connecticut Council and Hartford are both citizens of Connecticut.  *Id.* ¶¶ 3-4.

On June 21, 2019, the BSA and the Councils filed a motion for remand to the Texas state court on the basis that the Connecticut Council was properly joined and therefore diversity of citizenship did not exist.  Ex. 11 (Mot. to Remand).  The Motion for Remand remained pending in the Texas Federal Court for nearly nine months.  Ex. 12 (Mar. 10 Or.)

**E.**     **The BSA's Bankruptcy Filing and The Texas Federal Court's Order on The Motion to Remand**

On February 18, 2020, the BSA filed its Chapter 11 petition in the United States Bankruptcy Court for the District of Delaware.  *See In re Boy Scouts of America*, Lead Case No. 20-10343 (LSS) (Bankr. D. Del. Feb. 18, 2020).  Two days later, the Texas Federal Court entered an Order finding that, because the BSA brought the initial lawsuit against Hartford, the action was not subject to the automatic stay under Section 362 of the Bankruptcy Code and noted

that the parties may submit briefing on the issue of whether the action was stayed.  Ex. 13 (Feb. 21 Or.).

On March 6, 2020, Hartford filed its Response to Inquiry Regarding the Automatic Stay. Ex. 14 ("Stay Response").  In its Stay Response, Hartford agreed that the automatic stay did not apply to the Texas State Action, but asserted that "related to" jurisdiction existed under 28 U.S.C. § 1334 and that removal was therefore proper under 28 U.S.C. § 1452(a).  *Id.* at 3-5.

On March 10, 2020, the Texas Federal Court entered its Order concluding that Hartford improperly removed the case because the Connecticut Council was a proper party to the Texas State Action.  Ex. 12 at 15 (Mar. 10 Or.).  However, the Texas Federal Court denied BSA's motion for remand without prejudice, noting that "there is a plausible claim that 'related to' jurisdiction now exits under §1334 and that removal is supported under §1452(a)."  *Id.* at 16.  In denying the motion to remand, the Court invited the BSA and the Councils to file a second motion to remand by March 31, 2020 addressing mandatory abstention, discretionary abstention, and equitable remand.  *Id.*

**F.      The BSA's and Councils' Motion for Abstention and Remand, and Hartford's Filing of the Adversary Proceeding**

On March 26, 2020, five days before the deadline set by the Court for the remand motion, Hartford filed its Motion to Transfer Venue to the U.S. District Court for the District of Delaware Ex. 15 ("Motion to Transfer").  On March 31, 2020, the BSA filed its Motion for Abstention and Remand and Response to the Motion Transfer (Ex. 16, the "Abstention Motion"), asserting mandatory and discretionary abstention applied.

In its Abstention Motion, the BSA and the Councils asserted that each factor for mandatory abstention was clearly met.  *Id.*  In its response, Hartford did not argue that the factors had not been met, but rather argued that it would be more efficient to have the insurance dispute

before this Court despite the fact that this is not a factor for mandatory abstention.  Ex. 17 (Hartford Opp. at 6-7).  The parties completed briefing on the Abstention Motion and Motion to Transfer on May 5, 2020.  Ex. 18 (BSA Reply).

Only *one week* after briefing on the Abstention Motion and Motion to Transfer, Hartford filed this Adversary Proceeding.  Doc. No. 1 (Complaint).  Hartford also filed a notice with the Texas Federal Court contending that the filing of the Adversary Proceeding provided "coordination and efficiency" between the BSA's bankruptcy proceeding and the BSA's insurance coverage dispute with Hartford.  Ex. 19 (Notice).

In the Adversary Complaint, Hartford includes 38 Local Councils as well as 31 of the BSA and the Councils' insurers—many of whom issued policies to the BSA and Councils in years Hartford did not.  Doc. No. 1 (Compl. ¶¶ 13-87).  Hartford's claims in its Complaint mirror those in the Texas State Action, including the Number of Occurrences Issue, the Expected and Intended Issue, the Notice Issue, the Duty to Cooperate Issue and the Consent to Settle Issue.  Id. ¶¶ 126, 136, 143, 176, 185.  Hartford's Complaint also concedes that this matter is non-core.  *Id.* ¶ 10.

**G.**     **The Texas Federal Court's Ruling On The BSA's and The Councils' Motion for Abstention and Remand**

On August 6, 2020, the Texas Federal Court entered an order granting the BSA's and the Councils' Motion for Abstention and Remand.  Ex. 1 (Aug. 6 Or.).  In doing so, the Texas Federal Court noted that Hartford had conceded or failed to respond to the BSA and the Councils' contention that the factors for mandatory abstention had been satisfied.  *Id.* at 19.  As such, the Texas Federal Court ruled mandatory abstention applied and remanded the case to the Dallas District Court.  *Id.* at 18.

Further, the Texas Federal Court agreed with the BSA that Hartford's filing of the Adversary Proceeding was pure gamesmanship:

> To add, Hartford has not shown how starting the litigation from square one in a new forum, with a host of new issues and added parties that are tenuously related to this litigation, will somehow be more efficient than just sending the case back to Texas state court. **The Court thus agrees with the Boy Scouts that this appears to be further gamesmanship on Hartford's part to avoid litigation in a Texas forum.**

*Id.* at 16 (emphasis added).

The Texas Federal Court also held that Hartford's Motion to Transfer Venue was moot. *Id.* at 23.

## III.    ARGUMENT

### A.    This Court Should Dismiss Hartford's Adversary Proceeding (as the Texas Federal Court Has) Based on Mandatory Abstention.

Title 28 U.S.C. § 1334(b) confers original, but not exclusive jurisdiction over all civil proceedings "arising under title 11, or arising in or related to cases under title 11." However, as aptly noted by the Texas Federal Court, even when jurisdiction is proper under § 1334(b), federal courts ***must*** abstain from hearing such cases if a party can show certain factors under Section 1334(c)(2) are met.  *Id.* at 18; *see also Sun Healthcare Group, Inc. v. Levin (In re Sun Healthcare Group, Inc.)*, 267 B.R. 673, 676 (Bankr. D. Del. 2000).

The Third Circuit applies similar factors under Section 1334(c)(2) as those applied by the Texas Federal Court, which include six requirements:

> (1) the motion to abstain is timely; (2) the Movant has already commenced an action in a state court; (3) the action is based upon a state law claim or a state law cause of action; (4) the action can be timely adjudicated; (5) there is no independent basis for federal jurisdiction which would have permitted the action to have been commenced in a United States court, absent bankruptcy; and (6) the matter before the Bankruptcy Court is non-core.

*In re Sun Healthcare Group*, 267 B.R. at 676.  The Texas Federal Court considered all but one of these factors (with the exception of timeliness) and concluded that mandatory abstention applies. *Id.* at 22-23.  This Court should conclude the same and dismiss this Adversary Proceeding in favor of the Texas State Action.

      **1.**       **The Motion to Abstain is Timely**

While Section 1334(c)(2) provides that a motion to abstain shall be considered "[u]pon timely motion of a party," it does not set forth what will constitute a "timely" motion.  Generally, Third Circuit courts interpreting Section 1334(c)(2) have held a motion is timely if the motion is filed at an early procedural stage of the adversary proceeding, *i.e.* before the filing of any other pleadings.  *See In re Kessler*, 430 B.R. 155, 163 (Bankr. M.D. Pa. 2010) (finding an abstention motion timely where it was filed prior to filing an answer to the adversary proceeding complaint); *U.S. Physicians, Inc. v. Smith (In re U.S. Physicians, Inc.)*, Nos. 00–4622, 00–138, 2001 WL 793271, at *2 (E.D. Pa. July 12, 2001) (mandatory abstention not warranted where motion to abstain was filed in a post-trial brief).  This Motion is timely.

Hartford filed its Complaint on May 15, 2020.  Doc. No. 1 (Compl.).  The BSA and the Councils were not served with the Complaint until approximately June 30, 2020.  Doc. No. 3 (Summons).  The BSA and the Councils filed this motion in the first possible instance—after service and this is the first responsive pleading filed by the BSA and the Councils in this case. Therefore, this factor is met.

      **2.**       **The BSA and The Councils Have Already Commenced An Action in Texas State Court, And This Adversary Proceeding Seeks To Adjudicate The Same Coverage Disputes At Issue in the Texas State Action**

The BSA and the Councils commenced an action in Texas state court that seeks a determination of the same insurance coverage disputes as those raised by Hartford in its

Adversary Proceeding, including the Number of Occurrences Issue,[12] the Expected and Intended Issue,[13] the Notice Issue,[14] the Duty to Cooperate Issue,[15] and the Consent to Settle Issue.[16] Ex. 3 (Orig. Pet.).  Therefore, at its core, the Texas State Action and the Adversary Proceeding both seek to resolve the same insurance dispute—what coverage is available to the BSA and the Councils under the Hartford Policies for the Underlying Lawsuits.

The Texas Federal Court ruled that this factor of mandatory abstention—a commencement of a state action—was clearly met and that Hartford never argued otherwise. Ex. 1 at 20 (Aug. 6 Or.).  However, the BSA and the Councils anticipate that Hartford will continue its gamesmanship and argue that the two actions are not the same because Hartford has included additional parties and claims.  Such an argument, however, is baseless and unsupported by the relevant case law or the facts.

> ### i.    *The Texas State Action and the Adversary Proceeding Include the Same Claims Or Claims that Can, And Should Be Adjudicated in the Texas State Action*

Any contention by Hartford that this Adversary Proceeding is distinct because it includes additional claims than those present in the Texas State Action is meritless and courts have rejected similar arguments.

When evaluating competing state and federal actions for purposes of mandatory abstention, courts examined whether the state court action is "substantially similar" and whether the "same relief" is sought.  *See Trans World Airlines v. Icahn (In re Trans World Airlines)*, 278 B.R. 42, 49 (Bankr. D. Del. 2002) (finding mandatory abstention proper where an action had been filed in state court "seeking similar relief" as the adversary proceeding); *Allied Mech. &*

---

[12] *see* Ex. 3 (Orig. Pet.); Doc. No. 1, Claim No. 2 (Compl.)
[13] Ex. 4 (Hartford Answer); Doc. No. 1 (Compl.)
[14] *Id.*
[15] *Id.*
[16] *Id.*

*Plumbing Corp. v. Dynamic Hostels Dev. Fund Co. (In re Allied Mech. & Plumbing Corp.)*, 62 B.R. 873, 877-78 (Bankr. S.D.N.Y. 1986) (finding that an action was already commenced in state court because the debtor had filed a prepetition action in a state court which was "substantially similar to this adversary proceeding and [sought] the same relief as claimed in the instant proceeding"); *Consulting Actuarial Partners, Ltd. P'ship v. Descap Planning, Inc. (In re Consulting Actuarial Partners, Ltd. P'ship)*, 72 B.R. 821, 828 (Bankr. S.D.N.Y. 1987) (finding an action was commenced in a state forum as the state case sought "essentially the same relief as [was] requested in the adversary proceeding"). Here, the same relief is sought in both actions because, even though Hartford added claims, both actions are seeking the interpretation of the Hartford Policies to determine the rights and obligations of the parties.

Notably, a majority of the claims asserted by Hartford in the Adversary Proceeding are claims already being litigated in the Texas State Action, including the key dipositive issue—the Number of Occurrences Issue, as well as the Expected and Intended Issue, the Notice Issue, the Duty to Cooperate Issue and the Consent to Settle Issue. Ex. 3 (Orig. Pet.). The majority of the other claims also revolve around a dispute over the interpretation of the Hartford Policies, such as allocation and trigger. Doc. No. 1 (Compl., 151, 155). Therefore, these additional claims can be litigated in the Texas State Action.[17]

---

[17] Lastly, Hartford's additional contribution claim against the BSA and the Councils' insurers have nothing to do with the coverage Hartford owes the BSA and the Councils under the Hartford Policies. Doc. No. 1 (Compl., at 34-35). Therefore, this Court should not allow Hartford's added contribution claim to pollute the BSA and the Council's right to litigate this coverage dispute in the Texas State Action. The Hartford is free to litigate contribution with the BSA and the Councils' insurers; however, the BSA and the Councils need not be parties to that litigation.

ii.    *The Additional Parties to the Adversary Proceeding Do Not Make This Adversary Proceeding More Comprehensive Than the Texas State Action As Such Parties Are Not Needed To Resolve This Insurance Dispute*

The additional parties—the BSA's insurers and additional Councils—are not needed to resolve the dispute between the BSA, the Councils, and Hartford – the parties to the Texas State Action.  To begin with, like in the Illinois Action, almost every insurer named by Hartford in its Complaint is wholly irrelevant to any dispute between the BSA and Hartford because those insurers ***did not issue policies in the years that Hartford did***.  Doc. No. 1 (Compl., ¶¶ 53-87)) (noting years in which the insurers issued policies).  The majority of the Hartford Policies were issued to the BSA in the 1970s, yet the insurers named as defendants in the Complaint issued policies to BSA in the 1990s or later.  *Id.*

Hartford attempts to circumvent this by putting at issue a First State Policy issued in 1988 with a Sexual Abuse exclusion; however, the BSA and the Councils have never sought coverage under this policy for the Underlying Lawsuits and indeed, concede that no such coverage exists under this policy. Ex. 7 (Green Aff., ¶ 8).  As such, a majority of these insurers have no relevance to this coverage dispute.

Further, the additional Councils named in this proceeding are unnecessary to the relief sought in the Texas State Action.  The BSA and all of the Councils are named insureds under the Hartford Policies.  Ex. 7-C (Hartford Policy).  Any ruling on the interpretation of coverage afforded under the Hartford Policies would apply to those additional Councils.  At worst, these additional Councils can be added to the Texas State Action.

As the Texas Federal Court concluded, this Court should likewise conclude that the BSA and the Councils have already commenced an action in state court relating to the parties'

respective rights and obligations under the Hartford policies.  Therefore, this requirement for mandatory abstention has been met.

### 3.    The Adversary Proceeding Is Based on State Law Claims

Like the Texas State Action, the Adversary Proceeding involves purely state law issues. The Adversary Proceeding "seeks declarations regarding the parties' respective rights and obligations under the policies that Hartford issued to BSA and/or its local councils."  Doc. No. 1 at 1 (Compl.).  Specifically, Hartford asserts a breach of contract claim and several claims based on the interpretation of certain terms in the Hartford Policies.  *Id.*  As such, the Adversary Proceeding involves only state law claims and does not implicate any federal laws or the Bankruptcy Code.  *In re Pompelia*, 560 B.R. 422, 428 (Bankr. W.D. Pa. 2016) (finding that an adversary proceeding involved state law issues, and implicated no bankruptcy laws, as it was an "insurance dispute involving claims for declaratory relief based upon the interpretation and applicability of specific terms in the Policy").  Indeed, the Texas Federal Court also found that the Texas State Action "involves purely state law issues."  Ex.1 at 19 (Aug. 6 Or.).  Therefore, this requirement for mandatory abstention has been met.

### 4.    The Texas State Court Action Can Be Timely Adjudicated

When an out-of-state action is commenced prior to the debtor's Chapter 11 case, Delaware bankruptcy courts will presume that the out-of-state court can decide the matter more quickly than the bankruptcy court.  *In re Sun Healthcare Group, Inc.*, 267 B.R. at 676 ("Since the California Action was commenced prior to the Debtors' Chapter 11 cases, we presume that the California Court can decide the matter quicker than we can").  Bankruptcy courts have also determined that state courts can more easily decide the issues of the case if the issues involve state law.  *Id.*  Further, courts will consider the extent to which the suit has already been prosecuted in state court and the expectation of when the state court trial will commence.  *See In*

*re Glunk*, Nos. 05-31656-ELF, 06-373, 2006 WL 6659552, at \*20–21 (Bankr. E.D. Pa. Aug. 18, 2006) ("Considering that the parties have acknowledged that a trial can be scheduled in state court as early as February 2007, I conclude that the CP Action can be timely adjudicated in state court").

The Texas Federal Court held that the Texas state court is "equally equipped and more than competent to handle the state-law insurance coverage issues presented here." Ex. 1 at (Order). Further, while Hartford attempted to down-play the progress the parties had made in the year the Texas State Action was being litigated, the Texas Federal Court agreed that Hartford's "complaints" did not outweigh the evidence the BSA and the Councils presented to show that this factor was met. *Id.*

The BSA and Councils presented evidence to the Texas Federal Court (and also do so here) that the Texas State Action was commenced almost two years prior to the BSA's Chapter 11 case in the Dallas District Court. Ex. 3 (Orig. Pet.). Additionally, the Texas State Action has been extensively prosecuted in the Texas state court. Ex. 8 (Green Aff., ¶ 3). In the one year that the case was pending in Texas state court, the parties had conducted significant discovery (nearly completing written discovery) and had fully briefed a motion for summary judgment that would have resolved one of the key, dispositive issues—the Number of Occurrences Issue. *Id.*, ¶ 4. That motion was set for hearing less than a month from when Hartford first attempted—and failed—to transfer the case to the Texas Federal Court. Ex. 9 (Notice of Hearing); Ex. 10 (Notice of Rem.). Notably, the Texas State Action would have proceeded to trial on April 13, 2020 but for Hartford's improper removal to the Texas Federal Court. Ex. 20 (Or. Setting Trial)

Moreover, the Texas Federal Court also found it persuasive that, as detailed by the Texas Office of Court Administration report, of the civil cases disposed of in 2019, it took less than a

year for the Dallas District Courts to dispose of 79% of its cases, with only 9% of cases that were disposed of that took over 18 months.  Ex. 1 at 14-15; *see also* Ex. 7-A (Disposition Report); *WRT Creditors Liquidation Trust v. C.I.B.C. Oppenheimer Corp.*, 75 F. Supp. 2d 596, 606 (S.D. Tex. 1999) (finding movant's evidence that state trial docket was not congested, and that trial would likely occur within the next year sufficient to establish timely adjudication in state court).

Finally, Hartford argued extensively in its briefing to the Texas Federal Court that it would be more "efficient" and "equitable" for this Court to resolve the insurance dispute between the BSA, the Councils and Hartford.  Ex. 17 at 8.  The Texas Federal Court rejected any such argument as this is ***not*** a factor to mandatory abstention:

> The Court notes that Hartford's main argument in response to Plaintiffs' mandatory abstention motion is that the Boy Scouts has now changed position on the need to coordinate its insurance-coverage disputes.  ***But Hartford does not argue that this is relevant to any of the four mandatory abstention requirements***.  Instead, Hartford merely complains that it would be 'unfair' and 'inequitable' to allow the Boy Scouts to change their position.
>
> Ex. 1 at 23, n. 4 (Aug. 6 Or.) (emphasis added) (citations omitted).

Moreover, because this issue is non-core, Hartford's argument further fails because this Court would not resolve the Adversary Proceeding, but rather the United Stated District Court of Delaware would hear the case.  As noted by the Texas Federal Court, the Delaware District Court would be starting from "square one."  *Id.* at 16.  As such, it is indisputable that the issues raised in this Adversary Proceeding can be timely adjudicated by the Dallas District Court where the Texas State Action is pending.  Therefore, this requirement for mandatory abstention has been met.

### 5.    There is No Basis for Federal Jurisdiction Absent Bankruptcy

The Texas Federal Court has already ruled that there is no independent basis for federal jurisdiction absent the BSA's bankruptcy.  Ex. 1 at (Aug. 6 Or.).  Hartford also conceded this in

the Texas State Action.  *Id.* ("The Court previously noted, the only remaining basis for jurisdiction here appears to be § 1334(b), and neither party has argued otherwise.").

### 6.    The Adversary Proceeding is Non-Core

Mandatory abstention applies only to non-core proceedings—that is, proceedings "related to a case under title 11," but not "arising under title 11, or arising in a case under title 11." *Integrated Health Servs. v. Elkins (In re Integrated Health Servs)*, 291 B.R. 615, 618 (Bankr. D. Del. 2003).  There is no dispute that this Adversary Proceeding is non-core—Hartford conceded as much in the Texas State Action and does so as well in its Complaint.  *See* Doc. No. 1, Complaint., ¶ 10 ("This proceeding is a non-core proceeding pursuant to 28 U.S.C. § 157(b)(2).").

\*    \*    \*    \*    \*

As noted above, each of the factors for mandatory abstention have been met.  This Court (like the Texas Federal Court) should therefore dismiss this Adversary Proceeding.

## B.    **Even if Abstention is Not Mandatory (Which It Is), the Court Should Abstain Pursuant to the Discretionary Abstention Doctrine**

Even if the Court determines that mandatory abstention is not warranted—which it should not—the Court should nevertheless exercise its discretion to abstain from this matter pursuant to Section 1334(c)(1).  Courts in the Third Circuit consider twelve factors in determining whether discretionary abstention should apply:

> (1) the effect or lack thereof on the efficient administration of the estate; (2) the extent to  which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable state law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than the form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with the enforcement left to the bankruptcy court; (9) the burden of the court's docket; (10) the likelihood that the

commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence in the proceeding of nondebtor parties.

*In re Sun Healthcare Group, Inc.*, 267 B.R. at 678–79.  "Evaluating the twelve factors is not a mathematical formula."  *Id.*

### 1.    There Is No Effect on the Efficient Administration of the Estate

There is no evidence that abstention would have a detrimental effect on the administration of the BSA's estate.  Indeed, abstention would only further the resolution of this coverage dispute because, upon dismissal, the parties can resume the hearing on the motion for summary judgment related to the Number of Occurrences Issue now that the Texas Federal Court has remanded the action back to the Dallas District Court.  Such a ruling would resolve one of the most significant insurance issues between the parties—the Number of Occurrences Issue.

Nonetheless, Hartford extensively argued in its briefing to the Texas Federal Court that it should transfer the Texas State Action to this Court as it would be more efficient to have this Court resolve this coverage dispute.  Ex. 17 at 8.  The Texas Federal Court flatly rejected Hartford's argument:

> Although Hartford has notified the Court that it has filed an adversary proceeding associated with the Boy Scouts' Chapter 11 case, the Court is unpersuaded that this proceeding gives Hartford a greater interest in the outcome of the Boy Scouts' bankruptcy.  Hartford even acknowledges in its adversary complaint that the proceeding is 'non-core,' and thus **the bankruptcy court administering the Boy Scouts' Chapter 11 case cannot fully resolve its adversary proceeding. This also undermines Hartford's assertion that it will be somehow more efficient to send this litigation to a new forum**.

Ex. 1 at 15 (Aug. 6 Order) (emphasis added).

The Texas Federal Court also acknowledged, and gave great weight to the fact that, the BSA opposed the transfer of the Texas State Action to this Court.  *Id.*  The Court agreed with the BSA's argument that it "has every intention and incentive of having its bankruptcy case

administered in a manner that is most efficient and economical." *Id.*; s*ee also Shalom Torah Ctrs. v. Philadelphia Indem. Ins. Cos.*, 2011 WL 1322295, at *3 (finding no reason that the adjudication of the coverage action in state court would be less efficient, holding that the withdrawal of the reference to the adversary proceeding in the bankruptcy court would allow the bankruptcy court "to focus on the confirmation proceedings rather than the state law insurance coverage issues" and would "speed the bankruptcy to resolution and conserve the resources of the parties and of both courts"). This Court should likewise recognize that, here, the BSA—the party most interested in an efficient administration of its Chapter 11 proceeding—does not believe that adjudicating Hartford's insurance-coverage disputes would be efficient; quite the contrary, it would substantially impair the progress of the BSA's Chapter 11 proceeding.

### 2.    State Law Issues Predominate Over Bankruptcy Issues

As noted in Section A.3 *supra,* Hartford has conceded this factor as this action only involves claims under state law and no bankruptcy or federal laws are at issue. *See Shalom Torah Ctrs.*, 2011 WL 1322295, at *5 (finding that a "conventional dispute involving indemnification under an insurance policy" did not implicate the bankruptcy code and thus state law contract issues predominated). As such, this factor weighs in favor of abstention and remand.

### 3.    The Action Will Address Unsettled Issues of State Law

Abstention is appropriate where the state law issues are novel or complex. *See In re Integrated Health Servs.*, 291 B.R. at 620. However, even if an action does not involve unsettled issues of state law, courts will find that this factor weights in favor of having the state court decide the action where the state law issues predominate. *Id.*

The court adjudicating the Adversary Proceeding will need to resolve fundamentally complex state law issues, including choice-of-law issues, allocation, and the Number of

Occurrences Issue.  Ex. 21 (BSA MSJ).  By way of example, in resolving the BSA's and the Councils' motion for summary judgment on the Number of Occurrences Issue, a court will first have to adjudicate whether Texas state law conflicts with New Jersey state law regarding whether multiple sexual-abuse claims constitute a single occurrence or multiple occurrences.  *Id.* at 12-15.  In doing so, the court will have to determine whether the seminal case in Texas on Number of Occurrences—*HE. Butt Grocery Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 150 F .3d 526, 534 (5th Cir. 1998)—controls given that New Jersey law is silent on the issue.  *Id.* at 15–20.  Moreover, a court will have to resolve Hartford's erroneous contention that, even if Texas law applies, the BSA and the Councils have "misstated" Texas law.  Ex. 22 (Hartford Resp. to the BSA's and the Council's Motion for Summ. J., at 16, 17).  Thus, complex issues of state law abound.

However, even if this action did not involve complex state law issues, this factor would still weigh in favor of abstention because state law issues predominate.  *See Shalom Torah Ctrs.*, 2011 WL 1322295, at *5 ("Congress has made it plain that, in respect to non-core proceedings such as this (i.e., cases which assert purely state law causes of action), the federal court should not rush to usurp the traditional precincts of the state court").

### 4.      A Related Proceeding Has Commenced in State Court

As discussed in Section A.2 *supra*, the BSA and the Councils commenced the Texas State Action and the Texas Federal Court has now remanded that case to the Dallas District Court.  Ex.1.  (Aug. 6 Or.).  As such, it is undisputable that state proceeding is already commenced.

### 5.      There Is No Independent Federal Jurisdiction

As noted in Section A.5 *supra*, there is no other federal jurisdictional basis other than Section 1334.  *Id.*

6.      **The Adversary Proceeding Is Remote from the Main Case**

Courts in this circuit have held that abstention is proper where an action is not "inextricably intertwined" with the debtor and its bankruptcy case.  *See In re Integrated Health Servs.*, 291 B.R. at 621.[18]   This action is not inextricably intertwined with the bankruptcy case because it raises only non-core issues regarding policies that were issued pre-petition.  *Id.*

Further, even if the action could impact the amount of the ultimate settlement in BSA's bankruptcy case, as Hartford has contended, the impact would be the same regardless of whether this coverage dispute is resolved in the Texas state court or the Delaware district court.  *See Shalom Torah Centers*, 2011 WL 1322295, *5 (holding that, even if coverage action could impact the debtor-insured's plan of reorganization, "the impact would be the same regardless of the forum in which the coverage action is heard").  Thus, this factor is met.

7.      **The Adversary Proceeding Is Not a Core Proceeding**

As noted in Section A.6 *supra*, the Texas Federal Court has ruled and Hartford has conceded that this is a non-core proceeding. Doc. No. 1 at 2 (Compl., ¶ 10).

8.      **Severing the State Law Claims Is Not Necessary**

This Court need not consider the feasibility of severing the state law claims from the core bankruptcy matters because ***there are no core bankruptcy matters*** at issue in the Adversary Proceeding—the only claims at issue in this action are state law claims.  *See In re Integrated Health Servs.*, 291 B.R. at 621.  Thus, the state court can decide the entire suit with minimal disruption to the main bankruptcy estate.  *Id.*

---

[18]  In *In re Integrated Health Servs.*, the court held that an adversary proceeding was not inextricably intertwined with the administration of the debtor's estate because it raised only non-core issues—it alleged wrongdoing by the debtor that occurred ***pre-petition***.  *See In re Integrated Health Servs.*, 291 B.R. at 621.  Furthermore, the court reasoned that, even if the successful prosecution of the adversary proceeding may have resulted in an enhanced distribution for creditors in the bankruptcy case, that fact did not render the proceeding so related to the main case as to warrant the court's retention of jurisdiction over it.  *Id.*

### 9.    The Courts' Dockets Demand Abstention

Where a bankruptcy court has a heavy docket, an adversary proceeding will not be resolved more expeditiously in the bankruptcy court than in the state court. *See In re Integrated Health Servs.*, 291 B.R. at 622. As noted in Section B.4 *supra*, this Court will likely not resolve this coverage dispute given it is a non-core matter. Thus, the burden will be placed on the Delaware District Court and it would be a burden to force that court to educate itself on a matter that the Texas state court is already familiar with.

### 10.    Hartford Is Engaging in Forum Shopping

"Where a party commences an adversary proceeding to obtain an alternative forum to litigate identical issues that are the subject of state court litigation, courts will find abstention to be appropriate." *See D'Angelo v. J.P. Morgan Chase Bank (In re D'Angelo)*, 475 B.R. 424, 441 (Bankr. E.D. Pa. 2012) (finding permissive abstention warranted, noting the court's concern that the adversary proceeding "constitute[d] continued and unrepentant gamesmanship" by debtors in attempting to avoid a district court's prior order and to obtain an alternative forum for review of the order); *Best v. Galloway (In re Best)*, 417 B.R. 259, 275 (Bankr. E.D. Pa. 2009) (noting "it is probable that this adversary proceeding was commenced primarily to obtain a federal forum for the same issues that make up the debtor's new matter in the state court litigation").

Hartford's commencement of the Adversary Proceeding is quintessential forum shopping. Hartford first attempted—and failed—to intervene in the Illinois Action to litigate the same claims at issue the Texas State Action. Ex. 2 (Hartford Mot. Interv.) Hartford then attempted—and again failed—to remove the Texas State Action to the Texas Federal Court less than a month before the Texas state court was set to hear BSA's motion for summary judgment, which was fully briefed by both parties. Ex. 9 (Hrg. Not.); Ex.. 10 (Notice of Rem.). By doing so, Hartford not only stalled that substantive ruling, but essentially stalled all discovery in the action as well.

This is Hartford's **third** attempt to have any court but the Dallas District Court hear this case. Knowing it would likely lose the abstention issue in the Texas Federal Court, Hartford filed its Adversary Proceeding. As noted at length above, Hartford has gone to great lengths to forum shop and delay this action from being prosecuted. Hartford should not be allowed to continue to do so. As such, this factor also weighs in favor of abstention and remand.

### 11. This Court May Not Hold a Jury Trial

Hartford demands a jury trial in its Complaint and the BSA likewise requests a jury trial in its Petition. Doc. No. 1 (Compl., at 1); Ex. 3 (Orig. Pet., ¶ 70). Delaware Bankruptcy Courts, however, "have not been specially designated by the District Court to conduct a jury trial." *See In re Integrated Health Servs.*, 291 B.R. at 622 (favoring abstention because the only way to guarantee the right to a jury trial was for the reference to be withdrawn, which was beyond the court's control, or to abstain). The parties will be able to secure a jury trial in the Texas state court action. Therefore, this factor favors abstention.

### 12. Non-Debtors Are Parties to the Adversary Proceeding

Here, the named defendants include non-debtors, specifically the Councils and the insurers, which favors abstention. Doc. No. 1 (Compl., ¶¶ 14-87); *see also In re Integrated Health Servs.*, 291 B.R. at 623.

*    *    *    *    *

In sum, all the factors weigh in favor of abstention and this Court should dismiss this action. *McMahon Books v. New Castle Assocs. (In re McMahon Books)*, 173 B.R. 868, 877 (Bankr. D. Del. 1994) (holding that the "Complaint is dismissed on the grounds of abstention").

## IV.    CONCLUSION

The BSA and the Councils respectfully request that the Court grant the Motion and that this Court grant BSA and the Councils such other and further relief to which the BSA and the Councils may be properly entitled, including but not limited to attorneys' fees.

Dated:  August 14, 2020
      Wilmington, Delaware

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Eric W. Moats*

Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Eric W. Moats (No. 6441)
Paige N. Topper (No. 6470)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone:  (302) 658-9200
Email:  dabbott@mnat.com
       aremming@mnat.com
       emoats@mnat.com
       ptopper@mnat.com

– and –

HAYNES AND BOONE, L.L.P.
Ernest Martin, Jr.
Adrian Azer
Carla Green
2323 Victory Ave., Suite 700
Dallas, Texas 75219
Telephone:  (214) 651-5000
Email:  ernest.martin@haynesboone.com
       adrian.azer@haynesboone.com
       carla.green@haynesboone.com

ATTORNEYS FOR THE DEFENDANTS, DEBTORS, AND DEBTORS IN POSSESSION