## **EXHIBIT 2**

CAUSE NO. DC-18-07313

| | | |
|---|---|---|
| BOY SCOUTS OF AMERICA, et al., | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | DALLAS COUNTY, TEXAS |
| HARTFORD ACCIDENT AND | § | |
| INDEMNITY COMPANY AND FIRST | § | |
| STATE INSURANCE COMPANY, | § | |
| | § | |
| Defendants. | § | 95th JUDICIAL DISTRICT |

## DEFENDANTS HARTFORD ACCIDENT AND INDEMNITY COMPANY AND FIRST STATE INSURANCE COMPANY'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES

TO:    Plaintiffs Boy Scouts of America, Connecticut Yankee Council, Spirit of Adventure Council, Aloha Council, Cascade Pacific Council, by and through their attorneys of record, Ernest Martin, Jr., and Carla Green, **HAYNES AND BOONE, L.L.P.,** 2323 Victory Ave., Ste. 700, Dallas, TX 75219.

Pursuant to Rule 197 of the Texas Rules of Civil Procedure, Defendants Hartford Accident and Indemnity Company ("Hartford A&I") and First State Insurance Company ("First State," and together with Hartford A&I, "Hartford") serve the following Objections and Responses to Plaintiffs' First Set of Interrogatories (the "Interrogatories").

## GENERAL OBJECTIONS

Hartford makes the following General Objections to the Interrogatories.  These General Objections are part of the responses to each and every Interrogatory.  The assertion of the same, similar, or additional objections in the individual Responses to these Interrogatories, or the failure to assert any additional objections, does not waive any of Hartford's General Objections as set forth below:

1.     Hartford objects to any attempt by Plaintiffs to impose any obligation on Hartford beyond the obligations imposed by either the Texas Rules of Civil Procedure ("Civil Rules") or the Local Rules for the District Court of Dallas County ("Local Rules"). Hartford will respond to the Interrogatories in accordance with the Civil Rules and the Local Rules.

2.     Except to the extent that Hartford responds to such Interrogatories, Hartford objects to each Interrogatory that calls for Hartford to respond to "each," "every," "any," or "all" as overly broad and unduly burdensome. Hartford will respond only to the extent the information requested is relevant and not unduly burdensome to provide.

3.     Hartford objects to the Interrogatories to the extent they seek information that is neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence.

4.     Hartford objects to the Interrogatories to the extent they are overly broad or would require an undue burden or expense to respond.

5.     Hartford objects to the Interrogatories to the extent they seek information that is subject to the attorney-client privilege, attorney work product doctrine, common interest doctrine or any other applicable legal protection or rule of confidentiality.

6.     Hartford objects to the Interrogatories to the extent that they seek disclosure of the opinions, legal conclusions and theories, or mental impressions of Hartford, its representatives, or its counsel.

7.     Hartford objects to the Interrogatories to the extent they relate to policies or claims not at issue in this action on the grounds that such discovery is not reasonably calculated to lead to the discovery of admissible evidence.

8.      Hartford objects to the Interrogatories to the extent they seek documents containing trade secrets or other confidential, proprietary or sensitive business information.

9.      Hartford objects to the Interrogatories to the extent they seek information relating to the drafting history or interpretations of the insurance policies at issue.  The language of the policies is clear and unambiguous.  Accordingly, extrinsic information of this kind is irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence.

10.      Hartford objects to the Interrogatories to the extent they seek reinsurance information.  Information related to contracts between Hartford and third parties is irrelevant, immaterial, not reasonably calculated to lead to the discovery of admissible evidence, and is proprietary and confidential business information that is not subject to disclosure.

11.      Hartford objects to the Interrogatories to the extent that they seek opinions or contentions relating to facts, or the application of law to facts, as to which discovery has yet to be completed, and where providing a response would require Hartford to anticipate or assume factual information that may be forthcoming during discovery.

12.      Hartford reserves the right to amend and/or supplement these responses if it learns of new information relevant hereto, through discovery or otherwise, although it expressly assumes no obligation to do so.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1.      Hartford objects to the definition of "Aloha Council" as overly broad and unduly burdensome to the extent it includes predecessors-in-interest.  Hartford will respond to these Interrogatories on the basis that this term refers to Aloha Council.

2.      Hartford objects to the definition of "BSA" as overly broad and unduly burdensome to the extent it includes predecessors-in-interest.  Hartford will respond to these Interrogatories on the basis that this term refers to Boy Scouts of America.

3.      Hartford objects to the definition of "Cascade Council" as overly broad and unduly burdensome to the extent it includes predecessors-in-interest.  Hartford will respond to these Interrogatories on the basis that this term refers to Cascade Pacific Council.

4.      Hartford objects to the definition of "Communication" as overly broad and unduly burdensome.  Hartford further objects to the definition to the extent it seeks to include information and/or documents that are subject to the attorney-client privilege, attorney work product doctrine, common interest doctrine or any other rule of privilege or confidentiality.

5.      Hartford objects to the definition of "Concern," "concerning," "referring to," "regarding," "reflecting" and "relating" as overly broad and unduly burdensome.  Hartford further objects to the definition to the extent it seeks to include information and/or documents that are subject to the attorney-client privilege, attorney work product doctrine, common interest doctrine or any other rule of privilege or confidentiality.

6.      Hartford objects to the definition of "Connecticut Council" as overly broad and unduly burdensome to the extent it includes predecessors-in-interest.  Hartford will respond to these Interrogatories on the basis that this term refers to Connecticut Yankee Council.

7.      Hartford objects to the definition of "Document" as overly broad and unduly burdensome.  Hartford further objects to the definition to the extent it seeks to include information and/or documents that are subject to the attorney-client privilege, attorney work product doctrine, common interest doctrine or any other rule of privilege or confidentiality.

8.      Hartford objects to the definition of "Employee" as vague, ambiguous, overly broad and unduly burdensome and to the extent it seeks to include individuals, offices, committees, departments, division or groups that are not within the control of Hartford. Hartford further objects to the definition to the extent it seeks to include information that is subject to the attorney-client privilege, attorney work product doctrine, common interest doctrine or any other rule of privilege or confidentiality.

9.      Hartford objects to the definition of "Hartford" as overly broad and unduly burdensome to the extent it includes predecessors, successors, parent, sister or affiliated companies, partnerships, joint ventures, and former officers, directors, employees and partners.  Hartford will respond to these Interrogatories s on the basis that this term refers to Hartford Accident and Indemnity Company and First State Insurance Company.

10.      Hartford objects to the definition of "Insured" as overly broad and unduly burdensome.  Hartford further objects to the definition to the extent it seeks to include policyholders other than BSA or alleged additional insureds other than Aloha Council, Cascade Council, Connecticut Council and Spirit Council.  Hartford will respond to these Interrogatories on the basis that this term refers to BSA and for purposes of these Interrogatories only to Aloha Council, Cascade Council, Connecticut Council and Spirit Council.

11.      Harford objects to the definition of "ISO" as overly broad and unduly burdensome to the extent it includes corporate subgroups, parent companies, assignees, trustees, directors, Employees, successors in interest, subsidiaries, affiliates, and divisions. Hartford will respond to these Interrogatories on the basis that this terms refers to Insurance Services Office, Inc.

12.     Hartford objects to the definition of "Person" as vague, ambiguous, overly broad and unduly burdensome.

13.     Hartford objects to the definition of "Policy" as overly broad, unduly burdensome and not relevant to the extent that it seeks to include policies that are not at issue in this litigation.

14.     Hartford objects to the definition of "Reinsurance Agreement" as overly broad, unduly burdensome and not relevant to the extent that it seeks to include documents, agreements or policies that are not related to the policies at issue in this litigation.

15.     Hartford objects to the definition of "Spirit Council" as overly broad and unduly burdensome to the extent it includes predecessors-in-interest.  Hartford will respond to these Interrogatories on the basis that this term refers to Spirit of Adventure Council.

16.     Hartford objects to the definition of "Reinsurer" as overly broad, unduly burdensome and not relevant to the extent that it seeks to include documents, agreements or policies that are not related to the policies at issue in this litigation.

17.     Hartford objects to the definition of "Underlying Lawsuits" as overly broad, unduly burdensome. Hartford further objects on the basis that it is not clear what suits Underlying Lawsuits refers to.  As defined in the Petition, Underlying Lawsuits appears to refer to any and all sexual abuse claims and lawsuits that have been filed against BSA and and/or Aloha Council, Cascade Council, Connecticut Council and Spirit Council whether or not such claims or lawsuits trigger coverage under the policies at issue in this litigation. Moreover, because it is not clear what specific claims BSA and/or Aloha Council, Cascade Council, Connecticut Council and Spirit Council allege are seeking coverage for in the Petition, it is not clear which Plaintiff is seeking coverage for which suit.

18.    Hartford objects to each and every Instruction to the extent it seeks to impose any obligation on Hartford beyond the obligations imposed by the Civil Rules and the Local Rules.

19.    Hartford objects to Instruction No. 1 as overly broad and unduly burdensome and to the extent it seeks to impose an obligation on Hartford to produce information, documents or communications that are subject to the attorney-client privilege, the attorney work product doctrine, and any other rule of privilege or confidentiality.

## OBJECTIONS AND RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1:**    Identify each Person with knowledge regarding Your underwriting of the following terms in general liability Policies:  (1) "bodily injury" or "personal injury"; and (2) "occurrence."

**RESPONSE:**    Hartford objects to Interrogatory No. 1 on the grounds set forth in its General Objections and Objections to Definitions and Instructions, and on the grounds that it is vague and ambiguous because it is unclear whether plaintiffs are asking Hartford to identify every person who has knowledge regarding Hartford A&I's and First State's underwriting of the terms "bodily injury" or "personal injury" and "occurrence" in any general liability policies either company has ever underwritten.  Hartford objects on the basis that Interrogatory No. 1 is overly broad and unduly burdensome because Hartford is unable to identify every such Person who may have such knowledge regarding general liability policies.  Hartford also objects to Interrogatory No. 1 to the extent that it seeks information relating to the drafting history or interpretations of the policies at issue in this litigation.  The language of the policies is clear and unambiguous and therefore extrinsic evidence is

irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence.

Hartford further objects to Interrogatory No. 1 to the extent it seeks information regarding policies that are not at issue in this litigation. Hartford also objects to Interrogatory No. 1 to the extent it seeks disclosure of trade secrets or other confidential, proprietary and/or sensitive business information and to the extent it seeks information that is subject to the attorney-client privilege, attorney work product doctrine or any other applicable legal protection or rule of confidentiality. Based on the foregoing objections, Hartford is not required to respond to this Interrogatory.

**INTERROGATORY NO. 2:**    Identify all Persons who were involved in or who have knowledge regarding the drafting, marketing, underwriting, evaluating, approving, brokering, placing, or issuing of the Subject Insurance Policies, including, but not limited to, any applications for the Subject Insurance Policies, and with respect to each Person, describe the nature of that Person's participation or knowledge.

**RESPONSE:**    Hartford objects to Interrogatory No. 2 on the grounds set forth in its General Objections and Objections to Definitions and Instructions, and on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving its objections, Hartford states that it does not have independent knowledge regarding the Persons who were involved in or who have who have knowledge regarding the drafting, marketing, underwriting, evaluating, approving, brokering, placing, or issuing of the policies at issue in this litigation. However, the policies at issue in this litigation that were issued by Hartford A&I identify Wilson & Allen Inc., 200

Park Avenue, New York, NY 10017 as the Producer.  The policies at issue in this litigation

that were issued by First State identify Stewart Smith East, Inc. as the broker.  In addition,

the relevant underwriting documents identify a number of individuals that may have been

involved in the underwriting of the policies.  Hartford will produce relevant, non-privileged

documents following entry of an appropriate protective order.

**INTERROGATORY NO. 3:**    State whether any of the Subject Insurance Policies are or

are not exhausted and state the basis for such contention.

**RESPONSE:**    Hartford objects to Interrogatory No. 3 on the grounds set forth in its

General Objections and Objections to Definitions and Instructions, and on the grounds that

it is vague and ambiguous because it is not clear what is meant by the term "exhausted."  To

the extent Interrogatory No. 3 seeks information regarding whether any of the policies at

issue in this litigation are exhausted on a per occurrence basis, Hartford states, subject to and

without waiving its objections, that the per occurrence limit of the following policies is

exhausted for abuse claims due to the payment of a single per occurrence limit:

| Insurer | Policy No. | Policy Period |
|---------|-----------|---------------|
| Hartford A&I | 10CA43303 (primary) | 01/01/1972-01/01/1974 |
| Hartford A&I | 10HUA43302 (excess) | 01/01/1972-01/01/1973 |
| Hartford A&I | 10CA43329 (primary) | 01/01/1974-01/01/1975 |
| Hartford A&I | 10HUA43331 (excess) | 01/01/1974-01/01/1975 |
| Hartford A&I | 10CA43342 (primary) | 01/01/1975-01/01/1976 |

**INTERROGATORY NO. 4:**    Identify all Persons who had any responsibility for, or

have knowledge regarding the handling, investigation, evaluation, processing, adjusting,

review, or determination of the Underlying Lawsuits or Plaintiffs' claims for coverage for the Underlying Lawsuits or Plaintiffs' claims for coverage for the Underlying Lawsuits under the Subject Insurance Policies, and for each person, describe the nature of that Person's responsibility or knowledge.

**RESPONSE:**    Hartford objects to Interrogatory No. 4 on the grounds set forth in its General Objections and Objections to Definitions and Instructions, and on the grounds that it is vague and ambiguous because it is not clear what claims "Underlying Lawsuits" refers to.  Hartford objects to Interrogatory No. 4 to the extent it seeks information related to claims that are not at issue in this litigation because such information is irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving its objections, Hartford states that Audrey Kubas is the Hartford claims handler for the Boy Scouts Account.  Ms. Kubas may be contacted through counsel.

**INTERROGATORY NO. 5:**    Identify any exclusions, endorsements, provisions, terms, definitions, or conditions contained in any Subject Insurance Policy that You contend defeat or limit coverage for the Underlying Lawsuits; describe the basis for Your contention, and Identify each of Your past or present Employees with knowledge regarding the basis for Your contention.

**RESPONSE:**    Hartford objects to Interrogatory No. 5 on the grounds set forth in its General Objections and Objections to Definitions and Instructions, and on the grounds that it is vague, ambiguous and compound.  Hartford further objects to the extent this Interrogatory purports to demand "any" provisions on which Hartford may rely and that this interrogatory is premature.  Hartford further objects on the grounds that it cannot respond in full to Interrogatory No. 5 because Plaintiffs have not identified the claims for which

Hartford has allegedly refused to provide coverage. Accordingly, Hartford reserves the right to supplement its responses.

Subject to and without waiving its objections, Hartford responds to each separate request for information set forth in Interrogatory No. 5 as follows. With respect to the first request in Interrogatory No. 5, Hartford identifies the following exclusions, endorsements, provisions, terms, definitions, or conditions in the Hartford A&I primary policies that may be relevant to Hartford's coverage determination. Policy No.10CA43315 (09/21/1971-01/01/1972), Policy No. 10CA43303 (01/01/1972-01/01/1974), Policy No. 10CA43329 (01/01/1974-01/01/1975); and Policy No. 10CA43342E (01/01/1975-01/01/976) include at least the following provisions:

> I. COVERAGE A -- BODILY INJURY LIABILITY
>    COVERAGE B -- PROPERTY DAMAGE LIABILITY
>
> The company will pay on behalf of the *insured* all sums which the *insured* shall become legally obligated to pay as *damages* because of
>
> Coverage A -- *bodily injury* or
> Coverage B -- *property damage*
>
> to which this insurance applies, caused by an *occurrence,* and the company shall have the right and duty to defend any suit against the *insured* seeking *damages* on account of such *bodily injury* or *property damage*, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.
>
> ***
>
> II.    PERSONS INSURED

Each of the following is an *insured* under this insurance to the extent set forth below:...

(c) if the *named insured* is designated in the declarations as other than an individual, partnership or joint venture, the organization so designated and any executive officer, director or stockholder thereof while acting within the scope of his duties as such;

\*\*\*

## III.    LIMITS OF LIABILITY

Regardless of the number of (1) *insureds* under this policy, (2) persons or organizations who sustain *bodily injury* or *property damage*, or (3) claims made or suits brought on account of *bodily injury* or *property damage*, the company's liability is limited as follows:

Coverage A -- The limit of *bodily injury* liability stated in the schedule as applicable to "each person" is the limit of the company's liability for all *damages* because of *bodily injury* sustained by one person as the result of any one *occurrence;* but subject to the above provision respecting "each person," the total liability of the company for all *damages* because of *bodily injury* sustained by two or more persons as the result of any one *occurrence* shall not exceed the limit of *bodily injury* liability stated in the schedule as applicable to "each occurrence"

\*\*\*

## DEFINITIONS

"*occurrence*" means an accident, including injurious exposure to conditions, which results, during the policy period, in *bodily injury* or *property damage* neither expected nor intended from the standpoint of the *insured*

\*\*\*

"*occurrence*" means an accident, including continuous or repeated exposure to conditions, which results in *bodily injury* or *property damage* neither expected nor intended from the standpoint of the *insured*

\*\*\*

CONDITIONS

4.  Insured's Duties in the Event of Occurrence, Claim or Suit

(a) In the event of an *occurrence*, written notice containing particulars sufficient to identify the *insured* and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the *insured* to the company or any of its authorized agents as soon as practicable.  The *named insured* shall promptly take at his expense all reasonable steps to prevent other *bodily injury* or *property damage* from arising out of the same or similar conditions, but such expense shall not be recoverable under this policy.

(b) If a claim is made or suit is bought against the *insured*, the *insured* shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.

(c) The *insured* shall cooperate with the company and, upon the company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the *insured* because of *bodily injury* or *property damage* with respect to which insurance is afforded under this policy; and the *insured* shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses.  The *insured* shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of accident.

\*\*\*

4.  Insured's Duties in the Event of Occurrence, Claim or Suit

(a) In the event of an *occurrence*, written notice containing particulars sufficient to identify the *insured* and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or

for the *insured* to the company or any of its authorized agents as soon as practicable.

(b) If a claim is made or suit is bought against the *insured*, the *insured* shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.

(c) The *insured* shall cooperate with the company and, upon the company's request, assist in making settlements, in the conduct of suits and enforcing any right of contribution or indemnity against any person or organization who may be liable to the *insured* because of injury or damage with respect to which insurance is afforded under this policy; and the *insured* shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses.  The *insured* shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of accident.

The policies also contain Endorsements entitled Amendment -- Limits of Liability (Single Limits), which contain a number of provisions, including the following:

Regardless of the number of (1) insureds under this policy, (2) persons or organizations who sustained bodily injury or property damage, (3) claims made or suits brought on account of bodily injury or property damage or (4) automobiles or units of mobile equipment to which this policy applies, the company's liability is limited as follows:

Bodily Injury Liability and Property Damage Liability:

(A)  The limits of liability stated in the schedule as applicable to "each occurrence" is the total limit of the company's liability for all damages because of bodily injury or property damage as a result of any one occurrence.

***

Regardless of the number of (1) insureds under this policy, (2) persons or organizations who sustained bodily injury or property damage, (3) claims made or suits brought on account of bodily injury or property damage or (4) automobiles or units of mobile equipment to which this policy applies, the company's liability is limited as follows:

Bodily Injury Liability and Property Damage Liability:

(C)  The Limit of Liability stated in the schedule as applicable to "each occurrence" is the total limit of the company's liability for all damage because of bodily injury or property damage as a result of any one occurrence provided that with respect to any occurrence for which notice of this policy is given in lieu of security or when this policy is certified as proof of financial responsibility under the provisions of the motor vehicle financial responsibility law of any state or province such limit of liability shall be applied to provide the separate limits required by such law for bodily injury liability and property damage liability to the extent of the coverage required by such law, but the separate application of such shall not increase the total limit of the company's liability.

Hartford also identifies the following exclusions, endorsements, provisions, terms, definitions, or conditions in the Hartford A&I excess policies that may be relevant to its coverage determination.  Policy No. 10HUA43300 (05/01/1971-05/01/1972); Policy No. 10HUA43302 (01/01/1972-01/01/1974); and Policy No. 10HUA43331 (01/01/1974-01/01/1975) include at least the following provisions:

I. Coverage:  The company will indemnify the *insured* for all sums which the *insured* shall become legally obligated to pay as damages and expenses, all as hereinafter defined as included within the term *ultimate net loss*, by reason of liability

(a) imposed upon the *insured* by law, or
(b) assumed by the *named insured*, or by any officer, director, stockholder or employee thereof while acting within the scope of his duties as such, under any contract or agreement other than liability assumed with respect to *occurrences* taking place prior to the time such contract or agreement became effective

because of

(i) *personal injury* caused by, or
(ii) *property damage* caused by, or
(iii) *advertising liability* arising out of

an *occurrence* which takes place during the policy period anywhere in the world.

\*\*\*

III. Limits of Liability:  Regardless of the number of persons and organizations who are *insureds* under this policy and regardless of the number of claims made and suits brought against any or all *insureds*, the total limit of the company's liability for *ultimate net loss* resulting from any one *occurrence* shall be the occurrence limit stated in the declarations

\*\*\*

IV.  Definition of Insured:  The unqualified word "*insured*" includes the *named insured* and also

(a) any officer, director, or stockholder of the *named insured* while acting with the scope of his duties as such, and, if the *named insured* is or includes a partnership, any partner thereof but only with respect to his liability as such;

(b) except with respect to the ownership, maintenance or use, including loading or unloading, of *automobiles* while away from premises owned by, rented to or controlled by the *named insured* or the ways immediately adjoining, or of *aircraft*, (1) any employee of the *named insured* while acting within the scope of his duties as such; or (2) any person or organization acting as agent with respect to real estate management for the *named insured*;

\*\*\*

V. Other Definitions

"*Occurrence*" means an accident which takes place during the policy period, or that portion with the policy period of a continuous or repeated exposure to conditions, which causes *personal injury*, *property damage*, or *advertising liability* neither expected nor intended by the insured.

\*\*\*

CONDITIONS

4.  Notice of *Occurrence*:  Whenever it appears that an *occurrence* is likely to involve indemnity under this policy, written notice thereof shall be given to the company or any of its authorized agents as soon as practicable.  Such notice shall contain particulars sufficient to identify the *insured* and also reasonably obtainable information respecting the time, place and circumstances of the *occurrence*, the names and addresses of the injured and of available witnesses.

5.  Assistance and Cooperation of the *Insured*:  The *insured* shall be responsible for the investigation, settlement or defense of any claim made or suit brought or proceeding instituted against the *insured* which no underlying insurer is obligated to defend.  The *insured* shall use due diligence and prudence to settle all such claims and suits which in the exercise of sound judgment should be settled, provided, however, that the *insured* shall make no settlement for any sum in excess of the *retained limit* without the approval of the company.

The company shall have the right and shall be given the opportunity to associate with the *insured* or its underlying insurers, or both, in the defense and control of any claim, suit or proceeding which involves or appears reasonably likely to involve the company and in which event the *insured*, such insurers and the company shall cooperate in all things in defense of such claim, suit or proceeding.

The *insured* shall cooperate with the underlying insurers as required by the terms of the underlying insurance and comply with all the terms and conditions thereof, and shall enforce any right of contribution or indemnity against any person or organization who may be liable to the *insured* because of *personal injury, property damage* or *advertising liability* with respect to which insurance is afforded under this policy or the underlying policies.

8.  Loss Payable.  The company's liability under this policy with respect to any *occurrence* shall not attach until the amount of the applicable *underlying limit* has been paid by or on behalf of the *insured*, or the amount of the *retained limit* has been paid by the *insured* on account of such *occurrence*.  The *insured* shall make claim for any loss under this policy as soon as practicable after (a) the *insured* shall have paid *ultimate net loss* in excess of the *underlying limit*

or *retained limit* with respect to any *occurrence* or (b) the *insured's* obligation to pay such amounts shall have been finally determined either by judgment against the *insured* after actual trial or by written agreement of the *insured*, the claimant and the company.

Hartford also identifies the following exclusions, endorsements, provisions, terms, definitions, or conditions in the First State policies that may be relevant to Hartford's coverage determination.   Policy No. 908954 (01/01/1978-01/01/1979) and Policy No. 927616 (01/01/1979-01/01/1980) include at least the following provisions:

I. COVERAGE

To indemnify the INSURED for ULTIMATE NET LOSS, as defined hereinafter, in excess of RETAINED LIMIT, as herein stated, all sums which the INSURED shall be obligated to pay by reason of the liability imposed upon the INSURED by law or liability assumed by the INSURED under contract or agreement for damages and expenses, because of:

A.    PERSONAL INJURY, as hereinafter defined:
B.    PROPERTY DAMAGE, as hereinafter defined;
C.    ADVERTISING INJURY OR DAMAGE, as hereinafter defined

To which this policy applies, caused by an OCCURRENCE, as hereinafter defined, happening anywhere in the world.

\*\*\*

I.  COVERAGE

The Company hereby agrees, subject to the limitations, terms and conditions hereinafter mentioned, to indemnify the Insured for all sums which the Insured shall be obligated to pay by reason of the liability imposed upon the insured by law, or assumed under contract or agreement by the Named Insured for damages, direct or consequential and expenses on account of:

(a) Personal injuries, including death at any time resulting therefore,

(b) Property Damage,

(c) Advertising Liability,

Caused by or arising out of each occurrence happening anywhere in the world, and arising out of the hazards covered by and as defined in the Underlying Umbrella Policies stated below and issued by the "Underlying Umbrella Insurer."

\*\*\*

## II. UNDERLYING LIMIT-RETAINED LIMIT

The Company shall be liable only for the ULTIMATE NET LOSS in excess of the greater of the INSURED'S:

A.    UNDERLYING LIMIT -- an amount equal to the limits of liability indicated beside the underlying insurance listed in the Schedule A of underling insurance, plus the applicable limits of any other underlying insurance collectible by the INSURED: or

B.    RETAINED LIMIT -- the amount specified in item 3 I B of the Declarations as the result of any one occurrence not covered by any underlying insurance, and which shall be borne by the Insured.
\*\*\*

## III. LIMITS OF LIABILITY

Regardless of the number of persons and organizations who are INSUREDS under this policy and regardless of the number of claims made and suits brought against any or all INSUREDS, the total limit of the Company's liability for ULTIMATE NET LOSS resulting from any one OCCURRENCE shall not exceed the amount specified in item 3 II of the declarations.

\*\*\*

DEFINITIONS

E.  INSURED:

Each of the following is an INSURED to the extent set forth below:

(1) the NAMED INSURED, meaning the NAMED INSURED stated in item 1 of the declarations and any subsidiary, owned or controlled companies as now or hereafter constituted and of which prompt notice has been given to the Company.

(2) any person other than an employee of the NAMED INSURED or organization while acting as real estate manager for the NAMED INSURED.

(3) any INSURED (not being the NAMED INSURED under this policy) included in the schedule of underlying insurance but not for broader coverage than is available to such INSURED under the scheduled underlying insurance.

(4) except with respect to the ownership, maintenance, operation, use, loading or unloading of automobiles, aircraft or watercraft, any officer, director or stockholder of the NAMED INSURED while acting within the scope of his duties as such; but this subparagraph (4) shall not apply if it restricts the insurance granted under sub-paragraph (3) above.

(5) if the NAMED INSURED is designated in the declarations as a partnership or joint venture any partner or member thereof, but only with respect to the liability incurred in the operation of that partnership or joint venture; however, this policy does not apply to any automobile owned by or registered in the name of any partner.

\*\*\*

The word "Insured" includes the Named Insured and/or any Officer, Director, Stockholder, Partner or Employee of the Named Insured, while acting in his capacity as such.
\*\*\*

## H.  OCCURRENCE

With respect to Coverage I (A) and I (B) "OCCURRENCE" shall mean an accident or event including continuous repeated exposure to conditions, which results, during the policy period in PERSONAL INJURY or PROPERTY DAMAGE neither expected nor intended from the standpoint of the INSURED.

\*\*\*

CONDITIONS

D.  Notice of Occurrence.  Claim or Legal Proceedings: Upon the happening of an OCCURRENCE reasonably likely to involve the COMPANY hereunder, written notice shall be given as soon as practicable to the COMPANY or any of its authorized agents.  Such notice shall contain particulars sufficient to identify the INSURED and the fullest information obtainable at the time.

The INSURED shall give such notice of any claim made or legal proceeding commenced on account of such occurrence. If legal proceedings are begun, the INSURED, when requested by the COMPANY, shall forward to it each paper thereon, or a copy thereof, received by the INSURED or the INSURED'S representatives, together with copies of reports of investigations made by the INSURED with respect to such claim proceedings.

G.  Payment of ULTIMATE NET LOSS:  Coverage under the policy shall not apply unless and until the INSURED, or the INSURED'S underlying insurer, shall be obligated to pay the amount to the UNDERLYING LIMIT or RETAINED LIMIT on account of PERSONAL INJURY, PROPERTY DAMAGE or ADVERTISING INJURY or DAMAGE.  When the amount of ULTIMATE NET LOSS has finally been determined, the COMPANY shall promptly indemnity the INSURED the amount of ULTIMATE NET LOSS falling within the terms of this policy.

***

Whenever the Insured has information from which they may reasonably conclude that an occurrence covered hereunder involves injuries or damage which, in the event that the Insured shall be held liable, is likely to involve this Policy, notice shall be sent to the Company at 60 Easterymarch Street, Boston, Massachusetts, 02110 as soon as practicable, provided however, that failure to give notice of any occurrence which at the time of its happening did not appear to involve this Policy, but which, at a later date, would appear to give rise to claims hereunder, shall not prejudice such claims.

Hartford does not represent that the above-cited provisions, exclusions and endorsements represent a final list. Hartford's search for documents that comprise or relate to these insurance policies remains ongoing. Hartford reserves the right to amend its responses if further information is located.

With respect to the second request for information in Interrogatory no. 5, Hartford states that it cannot respond in full because Plaintiffs have not identified the claims for which Hartford allegedly refused to provide coverage. That said, subject to and without waiving its objections, Hartford's contentions are based, at least in part, on the policy language in the policies listed above.

With respect to the third request for information in Interrogatory no. 5, Hartford states, subject to and without waving it objections, that Audrey Kubas may have knowledge regarding Hartford's contentions. Ms. Kubas may be contacted through counsel.

**INTERROGATORY NO. 6:**    Identify all Persons who have knowledge regarding the drafting history or formulation of any provision in the Subject Insurance Policies included in Your responses to Interrogatory Nos. 1 and 7, or regarding similar provisions. This includes, but is not limited to, Persons who have knowledge regarding the use of or reference to any forms promulgated by ISO, other insurance companies, other insurance industry associations or rating organizations, and/or regulatory agencies, regarding the intended purpose, scope, or effect of the provisions included in your response to Interrogatory No. 7, or regarding similar provisions. With respect to each Person Identified, describe the nature of that Person's knowledge.

**RESPONSE:**    Hartford objects to Interrogatory No. 6 on the grounds set forth in its General Objections and Objections to Definitions and Instructions, and on the grounds that

it is vague, ambiguous, overly broad and unduly burdensome.  Hartford objects that this Request is vague with respect to the term "similar," particularly insofar as it purports to require Hartford to search for, locate, obtain, review and produce all drafting history documents for all of the policies in this case.  Hartford further objects to Interrogatory No. 6 to the extent that it seeks disclosure of trade secrets or other confidential, proprietary and/or sensitive business information and to the extent it seeks information that is subject to the attorney-client privilege, attorney work product doctrine or any other applicable legal protection or rule of confidentiality.  Hartford also objects to Interrogatory No. 6 to the extent that it seeks information relating to the drafting history or interpretations of the policies at issue in this litigation.  The language of the policies is clear and unambiguous.  This request accordingly is irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence.  Based on the foregoing objections, Hartford is not required to respond to this Interrogatory.

**INTERROGATORY NO. 7:**    For each of the Subject Insurance Policies, state whether they (a) do not obligate You to pay defense costs, (b) obligate You to pay defense costs subject to the applicable limits of liability, or (c) obligate You to pay defense costs in addition to the applicable limits of liability; describe the basis for Your contentions; and Identify each person with knowledge regarding the basis for Your contention.

**RESPONSE:**    Hartford objects to Interrogatory No. 7 on the grounds set forth in its General Objections and Objections to Definitions and Instructions, and on the grounds that it is vague, ambiguous and compound.  Subject to and without waiving its objections, Hartford states that the form of this interrogatory is improper because options (a), (b) and (c) are not complete insofar as policies that pay or reimburse defense costs do so subject to

the terms, conditions and limitations of the policies, including for example, the potential right and duty to defend and the requirement that defense costs be reasonable and necessary. The Subject Insurance Policies contain provisions regarding how defense costs are paid and Hartford refers Plaintiffs to those provisions in response to Interrogatory No. 7.

**INTERROGATORY NO. 8:**    Identify all Subject Insurance Policies for which reserves are set regarding Plaintiffs' pursuit of insurance coverage for the Underlying Lawsuits, including the amount set for reserves in all Subject Insurance Policies.  In Your response, Identify each person with knowledge regarding reserves set for all Subject Insurance Policies.

**RESPONSE:**    Hartford objects to Interrogatory No. 8 on the grounds set forth in its General Objections and Objections to Definitions and Instructions, and on the grounds that it is compound, vague, ambiguous, overly broad and unduly burdensome because it is not clear to which "Underlying Lawsuits" Interrogatory No. 8 refers.  Hartford further objects to Interrogatory No. 8 as reserves information that is irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence, and is proprietary and confidential business information that is not subject to disclosure.  Hartford also objects on the grounds that Interrogatory No. 8 seeks information that is subject to the attorney-client privilege, attorney work product doctrine or any other applicable legal protection or rule of confidentiality.  Based on the foregoing objections, Hartford is not required to respond to this Interrogatory.

**INTERROGATORY NO. 9:**    Identify all Reinsurance Agreements and Identify any Employee who was involved with the submission of any Underlying Lawsuits pursuant to any such Reinsurance Agreements.

**RESPONSE:**    Hartford objects to Interrogatory No. 9 on the grounds set forth in its General Objections and Objections to Definitions and Instructions, and on the grounds that it is compound, vague, ambiguous, overly broad and unduly burdensome because it is not clear which "Underlying Lawsuits" Interrogatory No. 9 refers to. Hartford further objects to Interrogatory No. 9 to the extent it seeks information regarding reinsurance information. Information related to contracts between Hartford and third parties is irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence, and is proprietary and confidential business information that is not subject to disclosure. Hartford also objects on the grounds that Interrogatory No. 9 seeks information that is subject to the attorney-client privilege, attorney work product doctrine or any other applicable legal protection or rule of confidentiality. Based on the foregoing objections, Hartford is not required to respond to this Interrogatory.

**INTERROGATORY NO. 10:**    Identify all Persons who assisted You in any way in responding to any one of these Interrogatories, including each Interrogatory number(s) with which he or she assisted in answering, regardless of whether the assistance he or she provided was incorporated into the final answer.

**RESPONSE:**    Hartford objects to Interrogatory No. 10 on the grounds set forth in its General Objections and Objections to Definitions and Instructions, and on the grounds that Interrogatory No. 10 is vague and ambiguous. Subject to and without waiving the foregoing objections, Hartford states that Timothy Brady and Audrey Kubas assisted in the preparation of Hartford's responses to the Interrogatories.

**INTERROGATORY NO. 11:**    Identify each Person who participated in, or is expected to participate in, the search for or collection of Documents responsive to Plaintiffs' First Set of Request for Production of Documents.

**RESPONSE:**    Subject to and without waiving its General Objections and Objections to Definitions and Instructions, Hartford states that Hartford's in-house legal counsel, legal support staff and Audrey Kubas participated in the search and collection of Documents responsive to Plaintiffs' First Set of Request for Production of Documents.

Respectfully submitted,

**ZELLE LLP**

By:    */s/ Todd M. Tippett*
       Todd M. Tippett
       Texas Bar No. 24046977
       ttippett@zelle.com
       Victoria L. Vish
       Texas Bar No. 24089850
       vvish@zelle.com

       901 Main Street, Suite 4000
       Dallas, Texas 75202-3975
       Telephone:    214-742-3000
       Facsimile:    214-760-8994

       James P. Ruggeri (*pro hac vice*)
       jruggeri@goodwin.com
       Joshua D. Weinberg (*pro hac vice*)
       jweinberg@goodwin.com
       Abigail W. Williams (*pro hac vice*)
       awilliams@goodwin.com

       1875 K Street, NW
       Suite 600
       Washington, DC
       20006

       **ATTORNEYS FOR DEFENDANTS**

## <u>CERTIFICATE OF SERVICE</u>

On this 5th day of September 2018, I served a true and correct copy of **DEFENDANT'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' INTERROGATORIES TO THE HARTFORD ACCIDENT AND INDEMNITY CO. AND FIRST STATE INSURANCE CO.** upon all known counsel of record via electronic filing as follows:

> Ernest Martin, Jr.
> State Bar No. 13063300
> ernestmartin@haynesboone.com
> Carla Green
> State Bar No. 24097762
> carlagreen@haynesboone.com
> **HAYNES AND BOONE, L.L.P.**
> 2323 Victory Ave., Suite 700
> Dallas, Texas 75219
> Telephone:     214-651-5000
> Telecopier:     214-651-5940
>
> **ATTORNEYS FOR PLAINTIFFS**

> _/s/ Todd M. Tippett_
> Todd M. Tippett

## **VERIFICATION**

Timothy Patrick Brady, duly sworn, states as follows:

That he is employed as a Claims Specialist in the Strategic Claim Management Group at The Hartford in Hartford, Connecticut; that he is authorized to certify these interrogatory responses on behalf of Hartford Accident and Indemnity Company and First State Insurance Company to Plaintiffs Boy Scouts of America, Connecticut Yankee Council, Spirit of Adventure Council, Aloha Council, Cascade Pacific Council's First Set of Interrogatories; that he has read the foregoing responses; that he is informed and believes that the answers set forth herein, subject to inadvertent or undisclosed errors, are true to the best of his knowledge, information and belief.

_____

Timothy Patrick Brady

Sworn to and subscribed before me this 5th day of September, 2018

_____
Notary Public

JILL Z. GILL
Notary Public, State of Connecticut
My Commission Expires July 31, 2021