# **EXHIBIT 3**

IN THE CIRCUIT CIVIL COURT OF COOK COUNTY, ILLINOIS

NATIONAL SURETY CORPORATI
v.
BOY SCOUTS OF AMERICA ET

No. 2017-CH-14975

ELECTRONICALLY FILED
6/26/2018 6:03 PM
2017-CH-14975
CALENDAR: 04
PAGE 1 of 1
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

## NOTICE OF MOTION

To: CROTTY SCHILTZ LLC(BOYS SCOUTS OF AMERICA) (gschiltz@crottylaw.com)
120N LASALLE #2000
CHICAGO,, IL 60602

On July 6, 2018, at 9:45 a.m. or as soon thereafter as counsel may be heard, I shall appear before the Honorable Flynn, Peter or any Judge sitting in that Judge's stead, in the courtroom usually occupied by him/her, located at Richard J. Daley Center, 50 West Washington Street, Court Room 2408, Illinois, and present Hartford's Motion to Intervene with Memorandum.

Name CORNBLEET JOCELYN FAYE
Address 150 S WACKER #1700
City/State/Zip CHICAGO, IL 60606
Atty. No. *Pro Se 99500*
Attorney for NON PARTY
Telephone (312) 431-3700

### ☐ PROOF OF SERVICE BY DELIVERY

I, ____________, ☐ the attorney ☐ non-attorney certify that on the ______ day of ____________, ______, I served this notice by delivering a copy personally to each person to whom it is directed.

Date ____________, ______

____________
Signature/Certification

### ☐ PROOF OF SERVICE BY MAIL

I, ____________, ☐ the attorney ☐ non-attorney certify that I served this notice by mailing a copy to ____________ at ____________
(address on envelope)

and depositing the same in the U. S. Mail at ____________
(place of mailing)

at ______ on the ______ day of ____________, ______, with proper postage prepaid.

Date ____________, ______

____________
Signature/Certification

### ☑ PROOF OF ELECTRONIC SERVICE

I, JOCELYN FAYE CORNBLEET, ☑ the attorney ☐ non-attorney certify that on the 27th day of June, 2018, I served this notice electronically ☑ via the Clerk's Office E-filing system, or ☐ by telefax transmission ( ______ pages) with consent of the recipient where permissible under Ill. Sup Ct. R.11, at fax no. ______ at ______, from ____________.
(Place)

Date June 27th, 2018

/s JOCELYN FAYE CORNBLEET
Signature/Certification

NOTE: If more than one person is served by delivery or mail, additional proof of service may be made by attaching an additional sheet to this Notice of Motion.

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
ORIGINAL - COURT FILE

ELECTRONICALLY FILED
6/26/2018 6:03 PM
2017-CH-14975
CALENDAR: 04
PAGE 1 of 13
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| NATIONAL SURETY CORPORATION,<br>Plaintiff,<br>v.<br>BOY SCOUTS OF AMERICA, *et al*.,<br>Defendants. | Case No. 2017-CH-14975<br>Hon. Peter Flynn |

**HARTFORD ACCIDENT AND INDEMNITY COMPANY'S
MOTION TO INTERVENE AS PLAINTIFF**

Now comes Proposed Intervenor/Plaintiff Hartford Accident and Indemnity Company ("Hartford"), by its attorneys and for its Motion to Intervene ("Motion"), and requests that this Court allow it to intervene in the above captioned matter, pursuant to 735 ILCS 5/2-408. In support of its Motion, Hartford files its Memorandum of Law in Support of its Motion contemporaneously herewith.

1. Plaintiff National Surety Corporation's complaint in this lawsuit seeks a declaration that Boy Scouts of America ("BSA") and its Chicago Area Council are not entitled to coverage under policies issued by National Surety for a lawsuit styled *John Doe et al., v. Thomas Hacker et al.*, Case No. 2017-L-007900 pending in the Circuit Court of Cook County, Illinois, Law Division (the "Hacker Lawsuit").

2. BSA filed a motion to dismiss National Surety's complaint on ripeness grounds.

3. However, after the commencement of this lawsuit, BSA filed a separate lawsuit in Texas state court against Hartford raising similar indemnity issues regarding the underlying sexual abuse lawsuits that it has argued to this Court are not ripe.

4. Pursuant to Section 2-408(b) of the Illinois Code of Civil Procedure 735 ILCS 2-408(b), a third-party may move to intervene in an action when the "applicant's claim or defense and the main action have a question of law or fact in common."

5. Hartford submits that the common questions of law or fact should be litigated here in the first filed coverage action and Hartford should be permitted to intervene.

6. Further, Hartford should be permitted to intervene in this action in order to bring all the issues into a single proceeding. Allowing these issues to be decided in a single proceeding will protect the parties from the risk of inconsistent findings.

7. Finally, there is no risk of prejudice. This case is still in the initial pleading stage, and no discovery has been conducted.

8. Instead, there is a risk of prejudice by denying Hartford's Motion by creating a possibility of duplicative or inconsistent rulings on similar coverage issues involving the same underlying claims.

WHEREFORE, for the reasons set forth herein and in Hartford's Memorandum of Law in Support, Proposed Intervenor/Plaintiff Hartford Accident and Indemnity Company respectfully requests that this Court allow it to intervene pursuant to 735 ILCS 5/2-408, and for such other relief as the Court deems just and proper.

Date: June 26, 2018

Respectfully submitted,

Proposed Intervenor
HARTFORD ACCIDENT & INDEMNITY COMPANY

By: s:/Jocelyn F. Cornbleet
One of its Attorneys

ELECTRONICALLY FILED
6/26/2018 6:03 PM
2017-CH-14975
PAGE 2 of 13

Dena Economou
Jocelyn F. Cornbleet
KARBAL, COHEN, ECONOMOU, SILK & DUNNE, LLC
150 South Wacker Drive, Suite 1700
Chicago, Illinois 60606
deconomou@karballaw.com
jcornbleet@karballaw.com
Tel: (312) 431-3700
Fax: (312) 431-3670

ELECTRONICALLY FILED
**6/26/2018 6:03 PM**
**2017-CH-14975**
PAGE 3 of 13

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| NATIONAL SURETY CORPORATION,<br>Plaintiff,<br>v.<br><br>BOY SCOUTS OF AMERICA, *et al.*,<br>Defendants. | Case No. 2017-CH-14975<br><br>Hon. Peter Flynn |

ELECTRONICALLY FILED
6/26/2018 6:03 PM
2017-CH-14975
PAGE 4 of 13

**MEMORANDUM OF LAW IN SUPPORT OF**
**HARTFORD ACCIDENT AND INDEMNITY COMPANY'S**
**MOTION TO INTERVENE AS PLAINTIFF**

Proposed Intervenor/Plaintiff Hartford Accident and Indemnity Company ("Hartford") respectfully submits this Memorandum of Law in Support of its Motion to Intervene ("Motion to Intervene") as a Plaintiff in the above-captioned action pursuant to 735 Ill. Comp. Stat. 5/2-408. Hartford has a substantial interest in this proceeding and the claims that Hartford proposes to assert involve common questions of law and fact, as set forth in the attached Proposed Complaint. *See* Exhibit 1. The Court accordingly should grant Hartford's Motion and permit Hartford to intervene as a Plaintiff.

## INTRODUCTION

This case presents an insurance coverage dispute between Boy Scouts of America ("BSA") and certain of its insurance companies, including plaintiff National Surety Corporation ("National Surety"). National Surety's Complaint in this action seeks declarations that BSA and its Chicago Area Council are not entitled to coverage under policies issued by National Surety for a lawsuit styled *John Doe et al., v. Thomas Hacker et al.*, Case No. 2017-L-007900 pending in the Circuit Court of Cook County, Illinois, Law Division (the "Hacker Lawsuit"). The plaintiffs in the Hacker Lawsuit allege that BSA and the Chicago Area Council intentionally permitted, failed to prevent,

ELECTRONICALLY FILED
6/26/2018 6:03 PM
2017-CH-14975
PAGE 5 of 13

and concealed alleged sexual abuse by a scout leader named Thomas Hacker. National Surety seeks declarations as to its rights and obligations under its policies. The declarations rest on several legal theories, including that (1) the alleged conduct does not constitute an "accident" as defined in the policy; (2) Mr. Hacker's conduct was expected or intended; and (3) there is no coverage for claims of abuse that took place outside the policy period.

In response, BSA filed a motion to dismiss this action on ripeness grounds. BSA argues that this case should be dismissed because indemnity issues are premature. Yet, while its motion to dismiss remains pending, BSA filed suit in Texas state court against Hartford raising essentially the same indemnity issues regarding the underlying sexual abuse lawsuits that it told this Court are not ripe for adjudication. If, as BSA now appears to acknowledge, those indemnity issues are ripe, Hartford submits that they should be litigated here in the first filed coverage action and Hartford should be permitted to intervene.

Intervention by Hartford is warranted in this action because the legal questions and general factual allegations at issue here are the same as those in the Texas action that BSA recently filed. For example, the underlying plaintiffs in the Hacker Lawsuit, as set forth in National Surety's complaint, allege that BSA knew "of the widespread problem of sexual abuse by scout masters." They further allege that BSA "has maintained a group of files known variously as the red files, perversion filed, or ineligible volunteer files (IV Files)," which "document multiple instances of child molesters volunteering with scouting, molesting a child, being reported to BSA, but then re-gaining entry into scouting." These common factual allegations give rise to the same complex legal questions regarding insurance coverage that will have to be decided to determine BSA's rights to coverage, if any, for all of its insurers. These issues include: (1) whether the Underlying Lawsuits constitute a single occurrence, (2) whether the conduct alleged in the Underlying

Lawsuits was expected or intended, (3) whether the Underlying Lawsuits constitute an accident and (4) what is the trigger of coverage for the Underlying Lawsuits.

Hartford should be permitted to intervene in this action in order to bring these issues into a single proceeding. Given the commonality of these allegations and the coverage questions they raise, a holistic approach is warranted. Allowing these issues to be decided in a single proceeding will protect the parties from the risk of inconsistent findings regarding the alleged BSA practice of negligently allowing "red folder" volunteers to participate, as well as provide consistent rulings regarding the coverage implications of those findings. It will also prevent any risk of re-litigation and the expense of duplicative litigation in multiple forums.

ELECTRONICALLY FILED
6/26/2018 6:03 PM
2017-CH-14975
PAGE 6 of 13

Finally, intervention is warranted because there is no danger of prejudice here. This case was filed just over six months ago and no discovery has been conducted. Indeed, none of the insurer defendants have answered or otherwise responded to the complaint. If there is any possibility of prejudice at all, it would come from denying Hartford's request to intervene, which creates the possibility of duplicative, expensive proceedings and inconsistent rulings on similar coverage issues involving the same underlying claims. The Court should grant Hartford's request and permit it to intervene.

**<u>FACTUAL BACKGROUND</u>**

This case presents an insurance dispute that National Surety filed against (1) BSA, (2) Chicago Area Council, (3) Hacker Lawsuit plaintiffs, and (4) all of BSA's insurers, except for Hartford. *See* Complaint ¶¶ 8-36.

**A. Underlying Abuse Claims Against BSA**

Over the past several years, numerous lawsuits have been filed against BSA by claimants alleging that they were sexually abused while participating in BSA programs (the "Underlying

ELECTRONICALLY FILED
6/26/2018 6:03 PM
2017-CH-14975
PAGE 7 of 13

Lawsuits"). The Hacker Lawsuit is just one of the many Underlying Lawsuits pending against BSA. The Underlying Lawsuit plaintiffs generally allege that they suffered personal injury due to sexual abuse and that BSA is liable because it knew, or should have known, about the alleged sexual abuse and failed to prevent it and/or concealed it.

**B. National Surety's Claims Against BSA In This Action**

National Surety issued Blanket Excess Liability Policy No. XLX1484309, in effect for the policy period January 1, 1983 to January 1, 1984 and Blanket Excess Liability Policy No. XLX1484309, in effect for the policy period January 1, 1984 to January 1, 1985. National Surety seeks declarations regarding its coverage obligation and the Hacker Lawsuit. Specifically, as set forth in National Surety's Complaint, the plaintiffs in the Hacker Lawsuit allege that BSA, "has been sued by individuals alleging that the Insured intentionally, permitted, failed to prevent, and concealed alleged sexual abuse by scout leader Thomas Hacker." Complaint at ¶ 2. They allege that BSA knew "of the widespread problem of sexual abuse by scout masters." *Id.* at ¶ 45. They further allege that "[s]ince approximately 1919, BOY SCOUTS OF AMERICA has maintained a group of files known variously as the red files, perversion files, or ineligible volunteer files (IV Files)." *Id.* And, they allege that the "The IV Files…document multiple instances of child molesters volunteering with scouting, molesting a child, being reported to BSA, but then re-gaining entry into scouting." *Id.* at ¶ 47(a)-(b). Because of this information, the underlying plaintiffs allege that "BSA knew or should have known that its "'ineligible volunteers' system of keeping track of pedophiles infiltrating its ranks and attempting to eliminate them did not function as it was intended, was flawed, and in many cases ineffective….BSA did nothing to educate or inform Scouts and their parents of the enormity of the pedophile problem, nor did BSA take action to correct its screening and/or education system." *Id.* ¶ 47(d). And the underlying plaintiffs allege

that "[i]nstead of addressing the problem by informing parents and scouts of the issue, or by implementing safety programs to prevent abuse, BSA instead concealed the problem by employing a public relations department to combat negative stories about sexual abuse in Scouting." *Id.* at ¶ 47(e).

National Security's Complaint seeks the following declarations: (1) BSA's alleged conduct is not an "accident" as defined in the policies; (2) the alleged conduct was expected or intended; (3) punitive damages are not insurable; (4) the alleged personal injury did not take place during the policy period; (5) the underlying insurance is not exhausted; (6) because no coverage exists under its policies, National Surety has no duty to reimburse defense costs; and (7) a declaration as to all of its rights and obligations under the policies. *See* Complaint ¶¶ 49-78.

ELECTRONICALLY FILED
6/26/2018 6:03 PM
2017-CH-14975
PAGE 8 of 13

**C. BSA's Motion To Dismiss National Surety's Claims**

On December 13, 2017, BSA and Chicago Area Council filed a Motion to Dismiss or Stay Plaintiff National Surety Corporation's Complaint for Declaratory Relief. In their motion, BSA and Chicago Area Council argue that "National Surety's declaratory judgment action should be dismissed or, in the alternative, stayed, because its coverage obligations depend wholly on the outcome of factual issues and claims that have yet to be addressed or resolved in the Hacker Litigation." Memorandum of Law in Support of Defendants Boy Scout of America and Chicago Area Council's Motion to Dismiss or Stay Plaintiff National Surety Corporation's Complaint for Declaratory Relief at 2 (Dec. 13, 2017). BSA further argues that "[b]ecause National Surety seeks a determination regarding its coverage obligations under the Policies for the Hacker Litigation before there has been a settlement, judgment, or any findings of fact in that case, this coverage action is premature and should dismissed or stayed pending resolution of the Hacker Litigation." *Id.* at 7. Instead, BSA argues that "National Surety's duty to indemnify BSA can only be

determined "if the insured has already incurred liability in the underlying claim against it." *Id.* at 10. BSA also alleges that "the question of whether the insurer has a 'duty to indemnify the insured for a particular liability is only ripe for consideration' after liability has been determined in the underlying action." *Id.*

**D. BSA's Claims Against Hartford In The Texas Action**

On June 21, 2018, BSA served Hartford with a complaint filed in the District Court of Dallas County, Texas. *See* Plaintiffs' Original Petition (June 18, 2018), *Boy Scouts of America et al., v. The Hartford Accident and Indemnity Co., et al.,* Case No. DC-18-07313 ("BSA Complaint") attached as Exhibit 2. BSA's allegations in the Texas Action seek declarations regarding Hartford's indemnity obligations, including a declaration that each claim of sexual abuse constitutes an "occurrence." The factual underpinnings of the Texas Action overlap substantially with this case. BSA alleges, for example, that the "Underlying Lawsuits generally allege personal injury due to sexual abuse and allege, *inter alia*, that BSA and BSA local councils were negligent in failing to prevent the sexual abuse." *Id.* at ¶ 18. The BSA Complaint likewise alleges that the "Underlying Lawsuits contain allegations that plaintiffs suffered and continue to suffer from bodily injury." *Id.* at ¶ 19. BSA does not allege that the Underlying Lawsuits have all been resolved.

ELECTRONICALLY FILED
6/26/2018 6:03 PM
2017-CH-14975
PAGE 9 of 13

**ARGUMENT**

735 Ill. Comp. Stat 5/2-408(b) provides that "[u]pon timely application anyone may in the discretion of the court be permitted to intervene in an action: (1) when a statute confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common." Intervention statutes are "remedial in nature and are to be construed liberally in order to allow a person to protect an interest jeopardized by pending litigation

to which he is not a party or to avoid relitigation in another suit of issues which are being litigated in a pending suit." *In re Marriage of Hartian*, 172 Ill. App. 3d 440, 450 (1st Dist. 1988).

Hartford's Proposed Complaint satisfies the standards for intervention in this case. *See* Exhibit 1. The claims National Surety and Hartford assert do not merely share a single common coverage question; they raise issues that are nearly identical. All of the central legal issues raised by National Surety are implicated in Hartford's proposed complaint as well. Courts faced with these types of overlapping claims routinely conclude that it would be an abuse of discretion to deny intervention, and this Court should reach the same conclusion. And there is no question that Hartford's Motion to Intervene is timely, as this coverage action is still in its initial stage. Accordingly, the Court should grant Hartford's Motion and pursuant to 735 Ill. Comp. Stat. 5/2-408(b), permit Hartford to file the Proposed Complaint.

ELECTRONICALLY FILED
6/26/2018 6:03 PM
2017-CH-14975
PAGE 10 of 13

### A. Legal And Factual Issues Overlap Substantially

Hartford's Proposed Complaint warrants intervention because Hartford intends to assert the same legal claims -- based on the same general facts -- that National Surety has already placed at the center of this case. Indeed, the Hacker Lawsuit is not only about a single scoutmaster, Thomas Hacker. It contains a number of allegations regarding the overarching practices by BSA, practices that the underlying plaintiffs argue give rise to BSA's liability. A review of the Hacker Lawsuit plaintiffs' allegations in National Surety's complaint makes this plain. The underlying plaintiffs in the Hacker Lawsuit allege the following:

- BSA knew "of the widespread problem of sexual abuse by scout masters." Complaint at ¶ 45.
- "Since approximately 1919, BOY SCOUTS OF AMERICA has maintained a group of files known variously as the red files, perversion files, or ineligible volunteer files (IV Files)." *Id.* at ¶ 47(a).

- "The IV Files…document multiple instances of child molesters volunteering with scouting, molesting a child, being reported to BSA, but then re-gaining entry into scouting." *Id.* at ¶ 46.
- "BSA knew or should have known that its 'ineligible volunteers' system of keeping track of pedophiles infiltrating its ranks and attempting to eliminate them did not function as it was intended, was flawed, and in many cases ineffective….BSA did nothing to educate or inform Scouts and their parents of the enormity of the pedophile problem, nor did BSA take action to correct its screening and/or education system." *Id.* ¶ 47(d).
- "Instead of addressing the problem by informing parents and scouts of the issue, or by implementing safety programs to prevent abuse, BSA instead concealed the problem by employing a public relations department to combat negative stories about sexual abuse in Scouting." *Id.* at ¶ 47(e).

These factual allegations -- BSA's alleged practice of negligently allowing "red folder" volunteers to participate in BSA programs -- are common to all of the Underlying Lawsuits pending against BSA. And it is these allegations that give rise to the complex legal questions that are common to all the Underlying Lawsuits and are at issue in this case and the Texas action BSA filed against Hartford. These coverage issues, which are raised in Hartford's Proposed Complaint, include:

ELECTRONICALLY FILED
**6/26/2018 6:03 PM**
2017-CH-14975
PAGE 11 of 13

- Number of occurrences, *i.e*., did the bodily injury suffered by the underlying abuse victims result from "BSA's failure to warn parents and guardians that Scouts might be abused" and therefore arises out of a single occurrence.
- Expected or intended, *.i.e.*, was the bodily injury alleged in the Underlying Lawsuits "expected or intended" because BSA knew "of the widespread problem of sexual abuse by scout masters." *See* National Surety Complaint at ¶ 56.
- Known Loss, *i.e.*, was the bodily injury alleged in the Underlying Lawsuits not an "accident" because BSA knew "of the widespread problem of sexual abuse by scout masters." *See* National Surety Complaint at ¶ ¶ 49-53.
- Trigger of coverage, *i.e.*, is coverage limited to sexual abuse that occurs during the policy period.

The common allegations and the coverage questions they raise weigh heavily in favor of a single proceeding. If the actions proceed in multiple forums, the parties will be faced with the potential for inconsistent findings of fact regarding what BSA knew or should have known regarding the "red folder" volunteers and inconsistent legal rulings based on those findings. Permitting Hartford

to intervene will prevent this from happening because it will allow all these issues to be address in a consistent manner in a single forum. Moreover, it will also fulfill the purpose of intervention, which "is to expedite litigation by disposing of the entire controversy among the persons involved in one action to prevent a multiplicity of actions." *Home Insurance Co., Inc. v. Lorelei Restaurant Co.*, 83 Ill. App.3d 1083, 1087 (1st Dist. 1980). Indeed, permitting Hartford to intervene will promote efficiency and judicial economy by resolving common coverage issues and disputes between BSA and all of its insurers, including Hartford. Accordingly, this Court should permit intervention.

ELECTRONICALLY FILED
6/26/2018 6:03 PM
2017-CH-14975
PAGE 12 of 13

**B. Indemnity Issues Are Ripe for Adjudication**

Contrary to BSA's assertions in this action, it appears that BSA does believe that indemnity issues are ripe for adjudication regarding the Underlying Lawsuits. BSA responded to National Surety's Complaint in this action by filing a motion to dismiss. BSA argues that National Surety's claims are not ripe because the underlying action -- the Hacker Lawsuit -- is ongoing. At the same time, however, BSA went ahead and filed BSA's Complaint against Hartford in Texas state court in which it asks the court there to decide indemnity issues arising out of the Underlying Lawsuits. Indeed, BSA seeks a number of declarations, including that "each sexual abuse claim against BSA constitutes an 'occurrence' under the Hartford Policies." BSA Complaint at ¶ 35. If it is true, as BSA appears to now argue, that indemnity-related questions are ripe, then Hartford respectfully submits that these issues should be litigated here in the first filed jurisdiction. To that end, Hartford submits that the Court should permit Hartford to intervene.

**C. Hartford's Motion to Intervene Is Timely**

Hartford's motion is timely. In evaluating the timing of a motion to intervene, courts look to whether the application to intervene has been made in a timely manner. *See, e.g., RTS Plumbing*

*Co., Inc. v. DeFazio*, 180 Ill. App.3d 1037, 1042 (1st Dist. 1989). The "[f]actors considered in making this determination include: when the intervenors became aware of the litigation; the amount of time that elapsed between the initiation of the action and the filing of the petition to intervene; and the reason for the party's failure to seek intervention at an earlier date. *In re Estate of Mueller*, 275 Ill. App.3d 128, 140 (1st Dist. 1995). Here, the litigation is its initial stages and discovery has not yet commenced. This action was filed only seven months ago, on November 9, 2017. And Hartford only became aware of this litigation after its affiliates First State Insurance Company and Twin City Fire Insurance Company were served. Indeed, no defendant insurers have even responded to the complaint. Hartford's motion to intervene should be granted.

ELECTRONICALLY FILED
**6/26/2018 6:03 PM**
2017-CH-14975
PAGE 13 of 13

**CONCLUSION**

For the reasons set forth above, the Court should grant Hartford's Motion to Intervene and permit Hartford to file its Proposed Complaint.

Date: June 26, 2018

Respectfully submitted,

s:/Jocelyn F. Cornbleet

Dena Economou
Jocelyn F. Cornbleet
KARBAL, COHEN, ECONOMOU, SILK & DUNNE, LLC
150 South Wacker Drive, 17th Floor
Chicago, IL 60606
Tel. (312) 431-3700
Fax (312) 431-3670

Attorneys for Proposed Intervenor
HARTFORD ACCIDENT & INDEMNITY COMPANY

# Chancery DIVISION

## Litigant List

Printed on 06/27/2018

Case Number: 2017-CH-14975



## Plaintiffs

| Plaintiffs Name | Plaintiffs Address | State | Zip | Unit # |
|---|---|---|---|---|
| NATIONAL SURETY CORPORATI | | | 0000 | |

Total Plaintiffs: **1**

## Defendants

| Defendant Name | Defendant Address | State | Unit # | Service By |
|---|---|---|---|---|
| BOY SCOUTS OF AMERICA ET | | 0000 | | |
| BOYS SCOUTS OF AMERICA | | 0000 | | |
| CHGO AREA COUNCIL INC | | 0000 | | |
| BOYS SCOUTS OF AMER INC | | 0000 | | |
| ALLIANZ INS COMPANY | | 0000 | | |
| INS COMPNY OF NORTH AMER | | 0000 | | |
| TRVLERS CASLTY SURETY COM | | 0000 | | |
| FIRST STATE INS COMPNY | | 0000 | | |
| TWIN CITY FIRE INS COMPNY | | 0000 | | |
| DANIELSON NTNL INS CMPNY | | 0000 | | |
| LANDMARK INS COMPANY | | 0000 | | |
| COLUMBIA | | 0000 | | |

CASLTYCOMPANY

| | |
|---|---|
| INTERNATIONAL INS GRP INC | 0000 |
| ARROWOOD INDEMNITY CMPNY | 0000 |
| FEDERAL INS COMPANY | 0000 |
| UNITED STATES FIRE INS CO | 0000 |
| UTICA MUTUAL INSURANCE CO | 0000 |
| NTNL UNION FIRE INS CO PA | 0000 |
| PACIFIC EMPLYS INS CMPNY | 0000 |
| HARBOR INS COMPANY | 0000 |
| ST PAUL FIRE MARINE INS C | 0000 |
| CHUBB CUSTOM INS COMPNY | 0000 |
| ST PAUL SURPLUS LINES INS | 0000 |
| LEXINGTON INS COMPANY | 0000 |
| JOHN DOE INSURER 1 50 | 0000 |
| JOHN DOE 2 | 0000 |
| JOHN DOE 3 | 0000 |
| JOHN DOE 4 | 0000 |
| JOHN DOE 5 | 0000 |
| JOHN DOE 6 | 0000 |

| | |
|---|---|
| JOHN DOE 7 | 0000 |
| JOHN DOE 8 | 0000 |
| JOHN DOE 9 | 0000 |
| JOHN DOE 10 | 0000 |
| JOHN DOE 11 | 0000 |
| JOHN DOE 12 | 0000 |
| JOHN DOE 13 | 0000 |
| JOHN DOE 14 | 0000 |
| JOHN DOE 15 | 0000 |
| JOHN DOE 16 | 0000 |
| JOHN DOE 17 | 0000 |
| JOHN DOE 18 | 0000 |

Total Defendants: **42**